# CASES ARGUED and DETERMINED.

## IN THE

# SUPREME COURT OF MISSISSIPPI

## AT THE

## OCTOBER TERM, 1920.

NEVILLE V. ADAMS COUNTY.

[86 South, 261. In Banc. No. 21364.]

1. INJUNCTION. *Constitutionality of law under which Governor appointed auditor to audit books of county official should be raised on allowance of his account for service.*

Where the Governor appointed an auditor under the provisions of section 2388, Code of 1906 (Hemingway's Code, section 4780), and chapter 241, Laws of 1914 (Hemingway's Code, section 4783), to audit the books of county officers, an injunction should not "issue to restrain the auditor from presenting an account for his services and to restrain the circuit judge from approving the auditor's account for services in such auditing before the completion of the audit. The proper remedy is for the board to raise the questions when the account for services is presented to them for allowance, when the sufficiency of the petition for the appointment of an auditor and the constitutionality of the law may be raised and passed on.

2. CONSTITUTIONAL LAW. *Constitutionality of statute will not be determined, except when necessary in a proper action.*

The constitutionality of chapter 241, Laws of 1914, will not be considered or passed on by this court until a proper suit or action is brought, nor then unless necessary to a disposition of the cause.

APPEAL from chancery court of Adams county.

HON. R. W. CUTRER, Chancellor.

Suit for injunction by Adams County against J. H. Neville and others. Injunction granted, motion to dis-

(413)

solve the injunction and a demurrer to the bill overruled, and defendant, Neville, appeals. Reversed and judgment entered dissolving the injunction and dismissing the bill.

*Reed, Brandon & Boman,* for appellant.

This suit is solely for injunction. There is no other relief sought. Injunction is a summary and extraordinary proceeding. It has been spoken of as the strong arm of equity. It is to be used generally for the prevention of great and irreparable harm. What irreparable harm was imminent in the present case? Can it be said that the examination of the books of the officers of the county for information as to their correctness would work a harm? Of course, we know what counsel for appellee contends that this harm would result from the expense of the work, which would be a burden on the funds of the county. Was not an audit desirable? It seems from the statement of the bill that a number of the citizens of the county thought so and petitioned the Governor for it. If the audit was desirable, is it not so that the taxpayers are properly protected in the reasonableness of the expense through the plan whereby the account of the services by the auditor should be first approved by two of the leading officials in the state before the same was paid. Besides, the bill practically admits the right of the Governor to appoint such examiner generally, but contends that the appointment was invalid because of insufficient number of signers on the petition therefor so that the services could be a proper debt against the county. Now, as we have before stated, this left only the question of payment of the examiner. The time for payment had not arrived; therefore, we say that the granting of the injunction was untimely and premature. We call the court's attention to the fact that the injunction was only to prevent the audit at the expense of Adams County under chapter 241, of the Laws of 1914.

In our view, the injunction was not only untimely granted, but in this case there was no real reason for it being granted at all. No irreparable injury would have resulted from leaving the matter of the reasonableness and correctness of the bill for services to the circuit judge and to the Governor. As a matter of fact, the taxpayer could have made objection to these officers. The bill shows that certain parties sent in a petition to the Governor, and that the board of supervisors also communicated with the Governor on the subject. Such communications could have been continued and any objection to the account could have been presented to the circuit judge or the Governor.

With reference to the petition to the Governor containing twenty-five per cent of the electors of the county: we contend, that this was a matter for the decision of the Governor, and that in making the appointment he decided that the petition was sufficiently signed. That this was one of his official duties as the executive of the state; and that he cannot be interfered with in this duty by any other department of the government. In addition, we submit that the bill fails to show with sufficient definiteness the facts necessary for the court to decide that the petition was not sufficient. It will be noted that the averment that the petition was not signed by twenty-five per cent of the qualified electors, is made on information and belief; and in the same way the averment is made relative to the signing of a counter-petition. No facts are shown regarding this, as to how many, and who signed the petition nor the counter-petition. In such cases as this, and where the summary and harsh remedy of injunction is invoked, certainly the pleader should be required in his bill to show all facts clearly which would justify the chancellor in his conclusion that the petition was not sufficiently signed. The conclusion of the pleader in such case should not be enough for the chancellor to base his decision that the injunction should be summarily granted. The governor having issued the commission based upon the petition as set forth in the bill; in the very nature of the case it is

presumed that he had a legal and sufficient petition before him at the time. The question as to whether at the time of the appointment the petition contained twenty-five per cent of the qualified electors, was for the governor to decide, and he decided that it did. Even though the court should hold that the judicial department of the government can interfere to prevent the execution of the law by the executive department, it should certainly be shown in the bill, by facts clearly and definitely stated that such petition did not contain twenty-five per cent of the qualified electors.

It is unique, that, in this case, a chancellor has enjoined a circuit judge from acting in a matter in which the legislature has empowered and directed him to act in accordance with his discretion. Can this be done? The governor was not enjoined. Why should the judge be enjoined and not the Governor.

Appellant asks the court to decide that the chancellor erred in overruling the demurrer to the bill of complaint and overruling the motion to dissolve the injunction.

*Wilmer Shields* and *Engle & Laub,* for appellee.

It should be noted by the court that the injunction in this case does not prevent the auditor from auditing the books of Adams County at the expense of the state, but simply prevents his proceedings to audit at the expense of Adams County, Mississippi. The appellant in this case insists that the injunction was sued out prematurely because the bill for services had not yet been rendered to Adams County, but a careful reading of the code will convince the court that to have delayed suing out the injunction at the time same was sued out would have been more or less laches and negligence upon the part of the county because as section 4783, Hemingway's Code is written the auditor submits his bill for services itemized to the circuit judge of the district who approves it if accurate it is then sent to the Governor who approves same, if he finds correct and reasonable, and thereupon it is the

duty of the board of supervisors to allow said account so that when the said account reaches the board of supervisors it is plainly seen that they have no discretion in the matter, but to allow the same, they have no discretion as to whether the amount is reasonable and thereupon it is the duty of the board of supervisors to allow said account so that when the said account reaches the board of supervisors it is plainly seen that they have no discretion in the matter, but to allow the same, they have no discretion as to whether the amount is reasonable or unreasonable, but that is a matter passed upon by the circuit judge and the governor and all that the board of supervisors can do is to order the bill paid or reject same *in toto,* so that the time to object to the audit was before the appellant had proceeded with his work, first, because in fairness that was the proper time in which he should be apprised of the fact that he would not be paid by Adams County and secondly, because if the county desired to make protest of the fact that the appointment was invalid then it should be done before the approval of the bill of the auditor by the circuit judge and the Governor.

The injunction for that reason was the proper remedy for the county to pursue to protect them in their right in this matter. The learned counsel for appellant quote in their brief at page No. 9 thereof at length from Ruling Case Law, Vol. 12, page 1008, as to what the law is in reference to the Governor being immune from judicial control or interference in the discharge of both discretionary and ministerial duties, but the case at bar does not deal with the governor's discretion or ministerial duty as to whether he will or will not appoint an auditor and the appellee does not question his right, provided always that the requisite number of names are upon the petition as set out in the legislature act and which act requires twenty-five per cent of the qualified electors on the petition for the auditor before the county can be made to pay for the services of the auditor and as the county of Adams and the taxpayers thereof must foot the bill in the instant

case they naturally have the right to inquire whether or not the statute has been complied with.

A reading of Ruling Case Law, Vol. 12, page 1008, which is cited by appellant plainly shows that the injunction sought in this case does not in anywise conflict with the law as set forth in the above treatise which discussion of the law ends up by stating: "The doctrine that the court will not control or interfere with the Governor in the performance of his duties applies only to acts within the scope of executive authority, and when he steps aside from the sphere of his duty and violates the law he is amenable to the same as any other person.

Within its scope acting as Governor he is powerful, but outside thereof, though pretending to act as a governor he is but an individual and must lower to the underlying system of our principle, that all men are equal before the law. The courts must settle rights in any controversy respecting violation thereof, whether the violator be the Governor or a private individual so in the instant case it would be a frivolous statute to require twenty-five per cent of the qualified electors on a petition before governor could appoint an auditor who could claim his pay from that county in which he did his auditing work and at the same time the law would stand that the auditor holding a commission could disregard he legislative act requiring twenty-five per cent of the qualified electors to sign that petition and standing on his commission under another section claim pyament under Hemingway's, section 4783 and then our courts would be powerless to interfere or to inquire by proper judicial proceeding whether as a matter of fact twenty-five per cent of the qualified electors of that county which was to bear the burden of taxation had signed a proper petition.

So too in Ruling Case Law at page one thousand and one, paragraph four, volume 12, Title, "Governor." It is stated to be the law that: "A Governor of a state is a mere executive officer; his general authority very narrowly limited by the Constitution of the state, with no undefined or disputable prerogative without power to affect one

shilling of the public money, but as he is authorized under the constitution or by a particular law having no color to represent the sovereignty of the state so as to bind it in any manner to its prejudice unless specially authorized thereto. And therefore all who contract with him to do it at their own peril and are bound to see (or take the consequences of their own indiscretion) that he has strict authority for any contract he makes, consequently a contract entered into with a second person by the Governor upon his assumption of authority which is within the province of the legislative department only will not bind the state, but in such cases the act of the governor is merely *ultra vires*.

It is generally held that the power of the Governor to employ counsel on behalf of the state is limited and is not authorized except under the authority of some statute. If statutory authority is given, the statute must be followed and for employment in other matters the attorney will have no claim on the state. But were this court to hold for the sake of argument, that simply because this was an appointment by the Governor under Hemingway's Code, section 4780, and the statute, Hemingway's section 4783, had been in nowise complied with as laid down by the legislature, but because it was a governmental appointment that its effect and application could not be questioned by the court, and were this court to hold that the law as laid down in *Globe, etc., Insurance Co.* v. *Firemen's Fund, etc., Co.*, 52 So., 454, was no longer the law of the state of Mississippi, the law in the case having been stated to be "A demurrer confesses every material allegation of the declaration and an affidavit filed by another denying the allegations therein did not affect the legal effect of the fact alleged when considered on demurrer, then this court overruling the law that" a demurrer admits the truth of allegations in the pleading attacked, *Correro* v. *Wright*, 47 So., 379, would still have to dispose of the question of the constitutionality of the statute under which the accountant in this case claims, before Adams county could be held to pay the bill of the accountant as passed upon by

the circuit judge, and offered the board of supervisors for payment without the right of Adams county or the taxpayers thereof to have notice or a hearing as to the reasonableness or lawfulness of the bill submitted. It is because of this fact that the constitutionality of the statute in question is called to the attention of the court. A reading of this statute and the other laws of the state of Mississippi plainly shows that the county and the taxpayers thereof do not have any voice or day in court.

ETHRIDGE, J., delivered the opinion of the court.

A'dams county filed an injunction suit against J. H. Neville, an auditor appointed by the Governor to audit the books of the county officers of Adams county, and against R. L. Corban, circuit judge, and the chancery clerk of Adams county, seeking to restrain the said Neville from auditing the books of Adams county at the expense of Adams county, and seeking to restrain R. L. Corban, circuit judge, from approving the account of said J. H. Neville and to restrain the chancery clerk from issuing a warrant for such auditing. The bill alleges that the petition to the Governor for the appointment of the said Neville did not contain twenty-five per cent of the qualified electors of Adams county, and also alleged that chapter 241, Laws of 1914 (section 4783, Hemingway's Code) was unconstitutional and void for several reasons set forth in the bill.

The chancellor granted the injunction as prayed for in the bill, and a motion was made to dissolve the injunction so granted, which motion was accompanied by a demurrer to the bill, which said demurrer and motion to dissolve the injunction was overruled by the chancellor, and an appeal granted to this court to settle the principles of the case.

Section 2388, Code of 1906 (section 4780, Hemingway's Code), reads as follows:

"The Governor is authorized, when he deems it proper, to appoint an expert accountant, whose duty it shall be,

under the direction of the Governor, to audit and examine the books, accounts, and vouchers of all officers, state or county, or of any of the state educational, charitable, or reformatory institutions, or of the officers thereof, or of any other institution supported in whole or in part by the state."

Chapter 241, Laws of 1914 (section 4783, Hemingway's Code), reads as follows:

"Where an expert accountant is appointed by the Governor under section 2388 of the Code of 1906 to audit the books and accounts of county officers of any county and the accountant so appointed shall perform services under such appointment in the auditing the books of any county officers, such accountant shall submit his bill for services, itemized, to the circuit judge of the district whose duty it shall be to approve the same, if found correct and reasonable. And thereupon said account with a copy of the order of the judge or court, shall be sent to the Governor for his approval, who, if he shall find the same correct and reasonable shall approve the same and thereupon it shall be the duty of the board of supervisors of the county the books of whose offices are audited, to allow said account. And, the clerk of the board shall then issue a warrant for the same on the county treasury as in other cases. As to auditors or accountants hereafter to be appointed by the Governor, this act shall apply only to cases where the Governor has been petitioned by twenty-five per cent of the qualified electors of the county to appoint an accountant. But as to services heretofore rendered by accountants under appointment from the Governor as to payment of said accountant the same shall apply and the accountant shall be paid as provided herein, although said accountant was appointed without a petition from the qualified electors."

It will be seen from a reading of these two sections that chapter 241 of the Laws of 1914 imposes the liability upon the county for the auditing of the books of the county where the Governor has been petitioned by twenty-five per cent of the qualified electors of the county to appoint an

accountant, and that this section, or chapter, does not restrict the power of the Governor to appoint an auditor under section 2388, Code of 1906 (section 4780 Hemingway's Code), and the right of the auditor to audit the books is not therefore involved in this suit, but the sole question presented is as to whether the auditor shall be paid out of some fund provided by the legislature for such purpose.

In our view it is not necessary now to enter upon a consideration of the constitutionality of chapter 241, Laws of 1914, because in our view the injunction was prematurely sued out. When the auditor presented his demand for compensation to the board of supervisors the questions of the legality of his appointment under the provisions of chapter 241 would then arise. And if the petition was insufficient, or if the act was unconstitutional, the board could then decline to allow the account, and the auditor would be compelled to institute some action in the courts to compel them to issue a warrant, or to appeal from their order refusing to issue the warrant to the circuit court, or by instituting a suit upon his account in the court having proper jurisdiction thereof, in which suit all proper questions could be determined. The auditor had not presented an account, but was proceeding with the audit. The records of the county are public records, and are subject to the inspection of any person, and there is at this time no necessity for resorting to the writ of injunction.

We think, therefore, the chancellor was in error in refusing to dissolve the injunction and his decree will be reversed, and judgment entered here dissolving the injunction and dismissing the bill.

*Reversed and rendered.*