JACKSON COUNTY v. NEVILLE.

[95 South. 626. No. 22727.]

1. CONSTITUTIONAL LAW. *Statute empowering circuit judge and Governor to pass on accountant's bill for services is constitutional.*
   Laws 1914, chapter 241 (Hemingway's Code, section 4783), empowering the circuit judge and governor to pass on reasonable-

ness and correctness of account for services of accountant appointed to audit county books, does not violate Constitution 1890, section 1, dividing the powers of government into three distinct departments, as the Governor and circuit judge are simply constituted an administrative board, and not a court.

2. CONSTITUTIONAL LAW. *Hearing on bill of accountant appointed by governor not a judicial proceeding, and due process is not required.*

Under Laws 1914, chapter 241 (Hemingway's Code, section 4783), provided that bill of accountant appointed to audit books and accounts of county officers shall be submitted to circuit judge, and then to governor for approval, the hearing before the circuit judge and governor is not a judicial proceeding, and due process is not required.

3. COUNTIES. *Revenues are subject to control of legislature, and it may direct their application to particuar purpose.*

Revenues of county are not its property in the same sense as revenues of private person or corporation, but are subject to control of legislature, and, when it directs their application to a particular purpose, the obligation to so pay is imposed on the county.

4. COUNTIES. *If hearing on bill of accountant requires presence of parties, board sufficiently represents county.*

If hearing before board composed of circuit judge and governor as to correctness and reasonableness of bill for services of accountant appointed to audit books and accounts of county officers is such a proceeding that the parties in interest have a right to be present, the statute provides for such presence, as the board represents the county.

5. COUNTIES. STATES. *Finding of governor as to sufficiency of petition to appoint accountant, and finding of governor and circuit judge as to reasonableness of bill for examination of accounts, held not subject to review.*

Under Laws 1914, chapter 241 (Hemingway's Code, section 4783), providing that bill for services of expert accountant appointed to audit county's books and accounts shall be submitted to the circuit judge and governor for approval, and that the act shall apply only when Governor is petitioned by electors to appoint accountant, the governor's finding that twenty-five per cent. of the qualified electors have petitioned for an examination of the record and the finding of the governor and circuit judge as to the correctness and reasonableness of the accountant's bill are final when the authority conferred is exercised within statutory limits.

6. STATES. *Examiner of accounts cannot be allowed more than seven dollars a day or anything for services of assistants.*

   Under Code 1906, section 2389 (Hemingway's Code, section 4781), examiner of accounts appointed by the governor under the preceding section is limited to seven dollars a day while actually employed, and cannot sublet the work or employ others to do it, and charge for their services, and, under Laws 1914, chapter 241 (Hemingway's Code, section 4783), the governor and circuit judge cannot approve his account for any sum beyond seven dollars a day. and cannot allow any amount for services of assistants.

7. STATES. *Statute held not to authorize appointment of accountant in case not previously authorized.*

   Laws 1914, chapter 241 (Hemingway's Code, section 4783), providing for approval by the governor and circuit judge of bill of accountant appointed to audit books and accounts of county, and providing that the act shall apply only when twenty-five per cent. of electors petition for appointment of accountant, does not authorize appointment in any case not previously authorized, but merely provides for payment by the county when electors petition for the audit.

8. STATES. *That examiner of accounts appointed for certain county does not affect validity of appointment.*

   That, in commissioning the examiner of accounts appointed under Code 1906, section 2388 et seq. (Hemingway's Code, section 4780 et seq.), he is named as examiner for a certain county, does not affect validity of his appointment.

9. STATES. *To recover for services examiner of accounts held bound to allege and prove issuance and delivery of commission.*

   Under Code 1906, section 2390 (Hemingway's Code, section 4782), providing that commission shall issue to examiner appointed by Governor to audit and examine county books and accounts, the commission is the only evidence of his authority and is indispensable, and it is essential to a recovery for services that the examiner allege and prove the issuance and delivery of the commission.

10. COUNTIES. *Not sufficient to approve accountant's bill as reasonable only.*

    Under Laws 1914, chapter 241 (Hemingway's Code, section 4783), providing that bill for services of accountant appointed by the governor to audit county books and accounts shall be approved

by the county judge and governor if found correct and reasonable, an approval of the bill "as reasonable" does not comply with the statute.

APPEAL from circuit court of Jackson county.

HON. C. L. RUSHING, Special Judge.

Action by J. H. Neville against Jackson county. From a judgment for plaintiff, defendant appeals. Reversed and remanded.

*Denny & Heidelberg,* for appellant.

We submit that every cause of demurrer set up by appellee, except the first cause to the first plea to the declaration is fully answered and overcome by sections 341 and 343, Code 1906 (Hemingway's Code, sections 3714 and 3716).

Under the allegations of the declaration, there was offered the board of supervisors no proof of lawful authority or duty to audit the books of said county; no proof of what books were audited; no proof of any authority in appellee to charge the *per diem* for himself and alleged assistants claimed in his said statement; no proof that said claim was correct, other than the mere certificate of the Judge and Governor that same is reasonable, whereas, the statute requires that such officers shall certify that the claim is both correct, and reasonable; no proof that the claim was not for a greater sum, dollar for dollar, than would have been actually due thereon had the claim otherwise been valid; no proof that appellee had made report of the result of said audit, under oath, to the Governor. Therefore, it would have been unlawful to have allowed said claim as it is shown by the pleadings here to have been represented, and it cannot be charged that the board of supervisors passed upon the claim, upon its merits, and until such shall have been done, this suit cannot be maintained.

Appellant submits that the first ground of error to the first plea to the declaration puts in issue the only question, or the chief question, to be answered in this case.

The Act of 1914 (section 4783, Hemingway's Code), provides that: "such accountant shall submit his bill for services, itemized, to the circuit judge of the district whose duty it shall be to approve the same, if found reasonable and correct. And thereupon the said account with a copy of the order of the judge, or court, shall be sent to the Governor for his approval, who if he shall find the same correct and reasonable, shall approve the same and thereupon it shall be the duty of the board of supervisors of the county the books of whose offices are audited, to allow said account." There is nothing in the act releasing the board of supervisors from the duty and responsibility of requiring due proof of the claim as a prerequisite to its allowance, as provided in said code section 341, nor relieving the board of liability for its allowance if not a lawful claim, under said sections 343 and 344 of code.

The act does not take from the board of supervisors any of its powers or duties pertaining to such matters. By the terms of said act, appellee was merely required to submit an itemized bill for his services to the judge and governor,—not proof of it, even by oath of the accountant. Neither the judge nor the Governor are authorized to pass upon the validity of the claim, or any other matter or thing pertaining thereto, other than the correctness and reasonableness of the bill submitted to them. No more is meant by the clause in the act that "it shall be the duty of the board to allow the account," than is meant by statutory requirement in reference to any other claim presented to the board for allowance, which is: to allow it, if valid, just and due. The authority, duty and liability of the board of supervisors is not restricted, nor, in any manner affected, by such clause in said act. The board is no more bound by the certificates of the judge and Governor in this matter, than it is bound by the oath of the prop-

erty owner, in giving in his assessment, and also by the oath of the assessor or the completion and filing of the assessment roll. There, it has the affidavit of the property owner as to the valuation of his property, and also the affidavit of the assessor that he has not placed upon or accepted an under-valuation of any property; yet, and notwithstanding these affidavits, the boards of supervisors are required to review and equalize such assessments according to the judgment of the members thereof, and on such proof as may be submitted. However, notice to the property owner must be given before any increase in the assessment is made, to render it valid, regardless of any statutory requirement therefor, because of the constitutional right of the taxpayer to be heard in the matter.

Assuming that the legislature could and did lawfully delegate the power to the judge and governor to determine upon the correctness and reasonableness of the account of appellee, it did not and could not declare and render conclusive and final the finding of such officers reached through an *ex parte* proceeding. Notice and opportunity to be heard and contest the correctness and reasonableness of the account before such judge and governor would be essential and necessary. The county could not otherwise be bound and its property taken. Such would be obnoxious to every sense of justice and fairness, and the destruction of a constitutional right. It would be the taking of appellant's property without due process of law, it would be a violation of that provision in our state Constitution which provides that "No person shall be deprived of life, liberty or property except by due process of law.

In *Simon* v. *Craft,* 182 U. S. 427, 45 L. Ed. 1165, it is said that the process of law means that there shall be a regular course of proceeding, and that notice of claims shall be given and interested parties given an opportunity to appear and assert their rights.

Due process of law is not necessarily judicial process, nor is the right of appeal essential to due process of law,

and a state has power to determine by what process legal rights may be asserted, or legal obligations be enforced, provided the method of procedure adopted for these purposes gives reasonable notice, and affords fair opportunity to be heard before the issues are decided. *Reetz* v. *Michigan,* 188 U. S. 505, 47 L. Ed. 563; *Public Clearing House* v. *Coyne,* 194 U. S., 497, 48 L. Ed. 1092; *Iowa R. Co.* v. *Iowa,* 160 U. S. 398, 40 L. Ed. 467; *Rogers* v. *Peck,* 199 U. S., 425, 50 L. Ed. 256.

In *Brown* v. *Levee Commissioners,* 50 Miss. 468, it is held that due process of law means that notice must be given before any party can be held liable, or his property affected by any action.

Under the authority above mentioned, and under the allegations of the declaration, the finding of the Judge and Governor, even if lawfully authorized, is a nullity and of no binding force whatever, inasmuch as no notice of the time and place of hearing or considering said account was given the county that it might have appeared and contested said claim. Such failure to give notice, regardless of the fact that the statute does not stipulate that notice be given, is fatal and renders the finding absolutely void, even if it were in all other respects legal. These officers had no jurisdiction of the parties or their property, and consequently was incompetent to act, without notice being first given to appellant whose funds they were attempting to take from appellant and have given to appellee. And it is necessary to a sufficient declaration that this jurisdictional fact appear on the face of the declaration, yet it is not there.

*Bullard & Bullard,* for appellant.

The appellee contended that the act of the judge and of the Governor in passing upon and allowing the demand was "ministerial," but that is fatally at war with his contenten that the sufficiency of the petition, if any there was, to

the Governor; the fact of appointment by the Governor to do the work; the fact that the work was done; the reasonableness and sufficiency of the account, etc., are all conclusively found against us by the judge and Governor. That is the function solely of judicial authority and the lower court so recognized in adopting the plaintiff's theory of the case. We concede that passing upon the "reasonableness and sufficiency" of a claim against the county is a judicial act, as this and other courts have frequently held.

The declaration must therefore stand or fall upon the proposition that it is founded upon a valid judgment. Conceding that the paper upon which the declaration is based is a judgment, is it, upon the face of it, a valid judgment?

The judge and Governor, respectively, acted as courts of special and limited jurisdiction. The proceeding before them and their authority, if they had any, were statutory, governed by the aforesaid act, and strict compliance must appear on the face of the record.

The act provides: "Such accountant shall submit his bill for services itemized." Now the bill which he must submit "itemized," is one for services performed under appointment by the Governor, under section 2388 of the Code of 1906, "where the Governor has been petitioned by twenty-five per cent. of the qualified electors of the county to appoint the accountant."

This court in the case of *Neville* v. *Adams County*, 86 So. 261, has held that upon the presentation of the account by the auditor, the legality of his appointment the sufficiency of the petition, as well as the correctness and reasonableness of the account, would arise. In fact the correctness of the account would involve consideration of the sufficiency of the petition and legality of the appointment by the Governor.

Whatever, therefore, it was necessary for the court which passed upon the correctness and reasonableness to find must be set forth in the pleading upon which it acts.

The court will not, cannot go outside the pleading upon which it acts. The statute specifically requires that the account shall be itemized. This was not done. Neither does it in any way appear from the account, or anything else that was before the courts that the audit was made pursuant to a petition of twenty-five per cent of the qualified electors, a fact which must have been found before it could be adjudged that the account was correct as well as reasonable.

Now the things which the act specifically requires both the Judge and Governor to find is that it is correct, and reasonable, not that it is reasonable alone but that it is also correct. It may be reasonable, and not an item of it correct. The statute made use of both words and both are mandatory.

It was contended below that it will be presumed that both were found because the account could not otherwise be "approved." Conceding as we must, that the act of both Governor and judge was judicial, there might be some force in that if their judgment had merely approved the account without stating any of the facts upon which it was based. But always, when any court, in its judgment states the findings upon which it is based, such statement is conclusive and the validity of the judgment must rest upon it. Both judge and the Governor have found that the account is reasonable. The account is not simply approved by them; by both it is "approved as reasonable," and not in any other particular. The proceeding is statutory. The powers of the courts are cleverly defined. Nothing is presumed in favor of the authority of their judgment and upon the face of it, the judgment upon which the declaration is based is void.

## THE DEMURRER TO FIRST PLEA.

It seems strange that the first plea should have been demurred to.

There is no appropriate general issue for the reason that the suit is an anomaly. Each material allegation of the declaration is therefore specifically put in issue by traverse. It may be contended that it was not necessary for the declaration to have contained some of the allegations which have been traversed. But they are all material and therefore when put in issue must be proved as alleged. The declaration alleges that the Governor appointed and commissioned the plaintiff to make the audit; he had no authority to make the audit without such appointment this allegation is traversed, and must therefore be proved.

Liability against the county can only be fixed by a petition of twenty-five per cent of the qualified electors to the Governor for that purpose. The declaration alleges that the Governor had been petitioned by twenty-five per cent. of the electors, and the allegation is traversed. It must therefore be proved.

The declaration alleges that the plaintiff made a complete audit of the books and records of the county and the plea denies it. The declaration alleges that an itemized verified account was submitted to the Governor, and the plea denies that, and the plea denies indebtedness to the plaintiff in any sum.

Now if it be contended that this is an action upon such a judicial record that can only be put in issue by the plea of *nul tiel* record, addressed to the court and not to a jury for trial, then we are ready to concede that the demurrer not only to that but to the other two pleas were correctly sustained. In that case it would be presumed in favor of the judgment, not that the appointment was petitioned for; not that the Governor made the appointment, etc., but that a court of competent jurisdiction had adjudicated these questions in an action between the plaintiff and the defendant, and therefore they are, between them concluded. That is precisely the principle on which the demurrers are predicated and is exactly what the lower court held as shown by his honor's opinion found at page 26 of the

record.  If this is correct there is nothing left for us to say.  It is not correct if the concluding paragraphs of the opinion in the case of *Neville* v. *Adams County*, are sound and the humble opinion of the writer of this brief has never doubted the soundness of the entire opinion in that case. There may be some question as to when and where this court will hold that the fact of the appointment, the petition, etc., is first triable.  This was not involved in the decision in the Adams County case.  The fact that it may be tried between the plaintiff and the defendant was involved and decided, but whether the trial of those facts will first occur before the judge and the Governor, or before the board of supervisors is open.

If, therefore, the opinion in the case of *Neville* v. *Adams County* is to stand, the cause must be reversed.

The Approval by the Judge and Governor was Void.

The approval was void for three reasons: (a) they did not comply with the statute, and (b) the statute in attempting to confer such authority on them is void, and (c) the defendant had no notice of the proceeding and no opportunity to be heard.

(a) The statute required of them that they find that the account was both "correct and reasonable" before they approved it.  They approved it only as reasonable, half of what they had to do, and that could not confer any authority on the board to pay the account.  It was argued below that it would be presumed that they also found it to be "correct," that it was only necessary that they approve it and it was not necessary that they express their findings of the facts on which it was based; also that to find it "reasonable" meant both.  The statute makes use of both words.  If both had not been intended, and if it had not been that the law maker intended that both should be found to exist as the basis of approval, only one would have been used.  The proceeding and authority are statutory and the statute must be complied with.

When any court expresses the finding of fact upon which its judgment is based, the judgment must stand or fall on that. It will be presumed that the court correctly stated its findings and inquiry will not be made to see whether or not the court might have gone further and found facts sufficient to support the judgment.

Neither the judge nor the Governor has "approved" this account. Both have approved it as "reasonable."

(b) The statute violates several provisions of the constitution whether some other authority participates or not.

"No person, or collection of persons, being one or belonging to one of these departments, shall exercise any power properly belonging to either of the others," section 2, Constitution 1890.

Now is passing upon an account against the county, a power properly belonging to one of the departments? Surely it is as much an act belonging to the judiciary as passing upon accounts against individuals. Then it cannot be committed to the Governor. Authority outside the plain letter of the Constitution is hardly necessary, but the following seem to be pertinent: C. J. 900; *Gregory* v. *The State,* 94 Ind. 384, 48 Am. R. 162; *State* v. *Pub. Serv. Com.,* 259 Mo. 704, 168 S. W. 1150; *State* v. *Johnson,* 234 Mo. 338, 137 S. W. 595; *Rochelle* v. *Lane,* 105 Tex. 350, 148 S. W. 558; *Clifford* v. *Heller,* 57 L. R. A. 318; *Bessur* v. *Toll Board Co.,* 114 N. W. 924; *Bridge St. etc.,* v. *Hogadone,* 114 N. W., 917; *Glass Co.* v. *State,* 69 S. E. 391; *Duprec* v. *The State,* 119 S. W. 301; *In Re Sims,* 25 L. R. A. 110.

It was conceded by the lower court that the provision of the act in question conferring that judicial power on the Governor was void, but he took the position that it could be eliminated and the balance upheld. He said: "The provisions of the act requiring the Governor to approve this account can be entirely eliminated and the act would present a sensible and complete law." That is not the

question at all.  The question is, can the Governor be
eliminated from the machinery for applying the act and
leave that feature of it complete as it came from the hands
of the legislature?  The legislature has provided the means
of applying and enforcing the act in this language:

"Such accountant shall submit his bill for services, item-
ized, to the judge of the district whose duty it shall be to
approve same, if found correct and reasonable.  And there-
upon said account with a copy of the order of the judge or
court, shall be sent to the Governor for his approval, who,
if he shall find the same correct and reasonable, shall ap-
prove the same and thereupon it shall be the duty of the
board of supervisors to allow the account."

The ministerial act, the act about which there is not
left the exercise of any discretion, is that performed by
the board, and it is performed upon the completed act
of the judge and Governor.  If we eliminate the part to
be performed by the governor we destroy the means adopted
by the legislature to enforce the act.  If the act would
still present a sensible and complete law, the machinery
for enforcing it would be gone.

Neither the circuit judge nor the Governor, under this
act are in any sense a court, although both are vested with
large judicial authority to hear and determine certain
claims against the county.  There is no place prescribed
for either to act, no means of notice to the county or any
one in authority; no means for the county or any one in-
terested in resisting the claim to be heard in defense, and
no means of appeal or redress against the act of either, how-
ever oppressive or erroneous it might be.

If one class of claims against the county may be dealt
with in that way, then all might be.  If it may be provided
that claims against the county may be inforced in such
proceedings then why may it not be provided that claims
against individuals may be dealt with in like manner?

In *Doyle* v. *Pittman,* 5 L. R. A. 359, due process of law
is defined as: "A legal proceeding in which the person pro-

ceeded against, if he is concluded thereby, shall have an opportunity to defend himself."

That a person shall not be deprived of property without an opportunity to be heard in defense of his right is a rule founded on the first principles of natural justice, and is older than written constitutions. This rule is the foundation of the constitutional guarantee of due process of law. 12 C. J. 1193 (B). *Flourney* v. *Smith*, 3 H. 62; *Donovan* v. *Vicksburg*, 29 Miss. 247; *Jack* v. *Thompson*, 41 Miss. 49.

That the principle of due process of law applies to such *quasi* corporation and arms of the state as municipalities, levee boards, counties, etc. See *Bobo* v. *Levee Commissioners*, 92 Miss. 793, and authorities cited in the briefs.

But the act in question is void for another reason. There is no law, it is not pretended that there is any law, fixing liability on Jackson county for this audit. No act of the legislature has fixed any liability on the county therefor, but it is claimed that the legislature by chapter 241, Acts 1914, authorized twenty-five per cent of the qualified electors of the county to do so.

Whatever the phraseology in which an act is couched it will be construed according to the intent and effect of it, and so its validity will be judged. The law, if it is valid, is about this: Examiners of public accounts may be appointed by the Governor to serve whenever and wherever he wills that they go and serve. We will suppose that he sends one of his appointees to audit the books and records of three counties, say Green, George and Jackson counties. The audit is made in all three under the same authority and by the same officer. In Jackson county some three hundred odd persons out of some thirty thousand or more requested the Governor by petition to have it made. Now if Green and George counties are not liable for the price of the audit and Jackson county is liable, why is it so? By section 91 of the Constitution no law can fix liability on Jackson county for such fees that does not equally

apply to all others.  If for these audits Jackson county is
liable and the other two are not, the liability was not fixed
on Jackson county by the law, because if so, the same law
would have made the other two liable.  It is therefore made
the act and will of these few men that fixed liability on
Jackson county for this four thousand five hundred seventy-
three dollars and fifteen cents, if it is liable.  The act of
1914 cannot be juggled into anything else.  If, therefore,
it is competent for the legislature to empower twenty-five
per cent. of the qualified electors of a county to fix lia-
bility on it by any means and for any cause, then the same
power can just as lawfully be conferred on one-fourth of
the lawyers of the county or on any proportion of any class
of people in it.

Let it be remembered that the act of the twenty-five per
cent of the electors in petitioning for the audit to be made,
has nothing whatever to do with conferring authority on
the Governor to appoint an auditor, or order him to do
the work.  That authority, if he has it at all, is complete
without the act of 1914, or anything done under it.  There-
fore, it inevitably follows that the petition of the twenty-
five per cent of the electors has no legal effect to accom-
plish any purpose unless it is to fix liability on the county
for the fees for making the audit. .  That would be to take
the funds of the county by virtue of the will of a few men
and not by due process of law.  As said by Mr. Chief Jus-
tice FULLER in *Giozza* v. *Tierman,* 148 U. S. 657: "Due
process of law is secured if the laws operate on all alike."
That is not true here.  The act of a few men could make
a vast difference in its operation in different counties if
the contention of appellee is allowed.  The only effect of
the act of 1914 is to authorize a few men to fix liability on
a county for doing something that was already provided
for.  It violates sections 14 and 91 of the Constitution,
and denies to the people of Jackson county the equal pro-
tection of the laws.

It is respectfully submitted that the judgment of the lower court ought to be reversed for the foregoing reasons, as well as those discussed by associate counsel.

*H. B. Everett,* for appellee.

As a basis for discussion and reply to the argument of the counsel I will briefly state the position that the appellee takes and will endeavor to maintain it.

1st. That the plaintiff has his action against the county because the board of supervisors refused to order the warrant of the county to be issued by its clerk as required by the statute which entitled the claimant either to appeal from the action of the board or bring suit for a claim already allowed by the proper tribunal designated by law. Without this order of the board the clerk could not be required by *mandamus* to issue the warrant and hence the suit, *Polk* v. *Board of Supervisors,* 57 Miss. 422; *Klein* v. *Board of Supervisors,* 58 Miss. 520.

2nd. That having the books of the county audited by an appointee of the Governor was a matter pertaining to the executive department of the state and in connection with which the Governor acted in a ministerial capacity as well as in his executive capacity.

3rd. That the state through its legislature has an unlimited right to control the funds and finances of the county and in the expenditure and application of such funds, the county board of supervisors has no right to be consulted or the county to be represented otherwise than as the state legislature may provide.

4th. That it was competent for the legislature to authorize the expenditure of county money in auditing the books of the officers of the county and have the account therefor allowed by a tribunal other than the board of supervisors and to declare such finding to be final as fixing a liability of the county as was done in this case.

5th. That the tribunal so designated by the legislature was a judge of the circuit court of the district whose findings were a judicial act and the action of the Governor as a representative of the state and county in approving the report of his employee was not the exercise of judicial power as contemplated by the constitution.

It seems to me that the issues raised may be treated with greater clearness by taking them up in the reverse order in which they are treated by the counsel for the appellant. For if the act was and is unconstitutional or if it were possible that it should be valid and yet be so construed as to fail in its manifest purpose in throwing the whole matter into the review then and in either event there is little use to discuss matters of the pleading or the demurrer to the several pleas of the defendant.

Chapter 241 of the Acts of 1914 was not intended merely to enlarge the powers of the Governor to have the books and records of state and county officials audited. That power was already provided for in a general way by section 2388 of the Code of 1906 and chapter 241 of the Acts of 1914 prescribes one condition precedent to the exercise of the authority by the Governor in having the books of the county audited at the expense of the county, to-wit, the petition of the twenty-five electors of the county. But that he might not be handicapped in the exercise of his discretion as chief executive and representative of both the state and county by the possible local opposition of the officers themselves whose books he might have audited, all connection in the procedure and payment of the expense was withdrawn from those officers by that provision substituting a circuit judge as a tribunal, charged with the judicial power, duty and discretion to audit the claim against the county. To make this provision effective the legislature proceeded to declare that audit to be sufficient to authorize the issuance of a warrant and made it mandatory upon the board of supervisors to allow the account so audited and also made it mandatory that the clerk

issue a warrant in payment of the same. The language of the statute is too plain for any quibble about the legislative intent.

"And thereupon said account with a copy of the order of the judge or court shall be sent to the governor for his approval, who, if he shall find the same correct and reasonable shall approve the same and thereupon it shall be the duty of the board of supervisors of the county, the books of whose offices are audited, to allow said account. And the clerk of the board shall then issue a warrant for the same on the county treasury as in other cases."

This is the direction for disposing of this claim after it has been adjudicated and approved by the circuit judge or the circuit court as special auditor of claims, under this statute, against the county.

Counsel appear to complain that the statute here provides for an adjudication against the county and the board of supervisors without any notice to the county or the board and an opportunity for a hearing. In answer to this it is sufficient to say that "the revenues of the county are not the property of the county in the sense in which the revenues of a private person or corporation is regarded. A county being a public corporation existing only for public purposes connected with the administration of the state government, which revenue is subject to the control of the legislature and when the legislature directs the application of a revenue to a particular purpose or its payment to any party, a duty is imposed and an obligation created on the county." 15 C. J. 581. The cases cited by this authority fully bear out the statement, prominent among them being *Kimbell* v. *Mobile County,* affirmed in 102 U. S. 691, 26 L. Ed. 238. Among the cases cited is that of *State* v. *Cummins,* 130 Tenn. 566. Under section 926 of the Code of 1892 which is practically the same as our present statute construed in this court in *Board of Supervisors* v. *Hughes,* 83 Miss. 195 and the case of *Jones* v. *Board of Supervisors,* 12 So. 341. This power of the legislature to

do this very thing is recognized by this court.   In this last case the court said, referring to the above section and Code of 1892 and the same law as it existed under the Code of 1880, section 2276:

"Under the Code of 1892 the allowance is to be certified to the board of supervisors not for revision or correction or allowance but that a warrant may issue to the county treasurer.   The only change in the statute is one purely of regulation and method in financial administration." *He-bron Bank* v. *Lawrence county,* 109 Miss. 397.

Construing our statute now under consideration in keeping with this line of adjudication on the subject it is manifest that in the first place that the legislature had a right to authorize the employment of the plaintiff by the Governor, to provide for the allowance of the expenses so incurred by the tribunal supposed to be removed from the local influences whose actions should be final and to require the payment of same by the order of the board of supervisors in the regular way for the issuance of a warrant by the clerk.   In this proceeding the county and the interests of the public were amply represented by the Governor of the state and there was no adjudication of a controversy involving the question of due process under the Constitution involved.

From reference to which I have access it seems that in South Dakota a statute having the same general purpose as the one here under consideration provides for the allowance of the *per diem* and expenses of executive accountants by the state treasurer just as they are allowed here by the circuit judge and in the case of *State* v. *Edmunds,* 36 S. D. 606, 157 N. W. 96, it is held that the finding of the state treasurer in the allowance of such claims is final and binding on the county in which such expenses were incurred and required to be allowed by the county commissioners with the issue of a county warrant although it deprive the board of all discretion.

But while it is true that the act in any of these cases of allowance of claims on the public treasury may be said to be in their nature judicial and as a matter of public administration are binding so far as the state and county is concerned they are at least merely administrative agencies and are not tribunals established for the public administration of justice and for hearing and decision of cases as in this court held with reference to commissioners of drainage districts and the State Railroad Commission in the case of *Telegraph Company* v. *Railroad Company,* 74 Miss. 80, and *Pegram* v. *Drainage District,* 108 Miss. 793, and hence it is a question whether or not this function might have been performed by the Governor or other executive officer under the Constitution for the separation of the powers of government. It will be borne in mind that in such cases the claimant is not bound by the finding of the tribunal and the finality and conclusiveness of such findings apply only against the public, and that merely as an administrative policy, *Shoemaker* v. *United States,* 147 U. S. 282, 13 Sup. Ct. 361; 2 Story, Const. 525.

So in this case the Governor does not act with the circuit judge in performing the judicial function but as the employer of the accountant and representative of the state and county he merely completes the ministerial act of the employment and final settlement with the employee. The finding of the two whether it be judicial or ministerial is by force of the legislative command binding on the county, in the absence of fraud and misconduct as to all the questions raised in this action by way of defense. It is either that and all of that or the act is void and the legislative intent and purpose a complete failure.

### THE PLEADING.

Treating the act of the judge as the performance of a judicial act under the statute and the finality of that performance as a judicial approval of the claim it was not re-

quired in any other like case, that the findings of the judge on the question of correctness and the proofs of correctness of the reasonableness of the proofs of the reasonableness be entered or become a part of his approval, and as in all other judgments and orders of like character it will be presumed that all things required to be found upon proof to be submitted as a basis of the final judgment where done and found upon proper proofs and it was only necessary under the statute to produce an order of approval and the duty devolving upon the judge when the bill being submitted to him was simply that of approving the same on condition, of course, that he should have found the same to be correct and reasonable. His approval carried with it the presumption of the findings required by the statute on due proof and investigation.

The question now is may it be said that it is still open for this court to investigate and inquire whether or not and in what manner the Governor appointed and commissioned the plaintiff, whether or not he was petitioned to do so by twenty-five per cent of the qualified electors, whether or not the complainant made a complete audit of the books and whether or not having done so he presented the claim as reasonable and owing by the county. If this may be done I assume that it may also be inquired into as to whether or not the work was properly done and completed and whether or not the charges made therefor were reasonable and proper and generally whether or not the claim was reasonable and owing by the court. If these things may be done in this proceeding then the finding was not conclusive of anything and none of these things was left to the discretion of the Governor and the judicial inquiry and judgment of the judge though they all lay at the very foundation of the claim.

If these matters are not concluded and foreclosed as against an inquiry into and a finding by this court then the intent and purpose of the legislature is completely thwarted, since the board of supervisors are complete mas-

ters of the situation by simply refusing to obey the law and by throwing the matter into the courts doing indirectly what they could not do directly to the complete destruction of the plain intent and purpose of the legislature in removing these obstacles that might be thrown in the way by local authorities.

But in this case there arises a question of estoppel and one of common honesty, when it is contended that the state can appropriate the labor and outlay represented by this large sum of money, earned arbitrated and allowed wherein the state is represented at every turn and its rights protected by its own officers and tribunal of its own choosing, by challenging the constitutionality of the law providing for its auditing tribunal.

In the case of *Jack* v. *State,* 6 S. & M. 494, the legislature designated and appointed an auditing commission to adjudicate a claim of a citizen against the state. The Governor was one of that commission. The claim was disallowed and the court held that the claimant was bound by the finding as a final adjudication because he appeared and submitted to the jurisdiction. Can the state or the county, which is but a part of the state and bound if the state is bound, be permitted to exercise a right contrary to the rules of estoppel and also of common honesty when the citizens could not. If the citizen must be concluded by an adjudication because he voluntarily submitted his rights to be so adjudicated can the state under like circumstances repudiate the acts of a tribunal of its own choosing because of a technicality as to jurisdiction when the citizen could not.


ANDERSON, J., delivered the opinion of the court.

This suit was brought in the circuit court of Jackson county by the appellee, J. H. Neville, against Jackson county, the appellant, for four thousand eight hundred forty-seven dollars and forty-three cents compensation alleged

to be due appellee by appellant for his services in examining and auditing the books, accounts, vouchers, and records of the county officers of said county. There was a judgment on the pleadings for appellee for the amount sued for, from which judgment appellant prosecutes this appeal.

Appellee was appointed by the Governor and claims compensation for services rendered under sections 2388 to 2392, inclusive, Code of 1906 (sections 4780 to 4785, inclusive, Hemingway's Code), and chapter 241, Laws of 1914 (section 4783, Hemingway's Code).

The case made by appellee's declaration is in substance as follows: That appellee, an expert accountant, was appointed and commissioned by the Governor of the state, pursuant to the above statute, to audit the books of the officers of Jackson county, which appointment was made in accordance with the provisions of said statute, twenty-five per cent. of the qualified electors of said county having petitioned the Governor for that purpose; that appellee completed an audit of the books and records of the officers of said county "at a cost of four thousand five hundred seventy-three dollars and fifteen cents," and submitted said audit and his verified itemized account of his expenses and charges in doing said work to the circuit judge of the district in which said county was situated, who approved said account, and that afterwards said account was examined and approved by the Governor, copies of the circuit judge's and the Governor's approval being attached to the declaration as an exhibit thereto along with a statement of said account; that afterwards appellee applied to the board of supervisors of said county for an order authorizing its clerk to issue a warrant on the county treasurer of said county for the payment of said costs and charges so approved by the circuit judge and Governor, which statement of the account, with such approval, was presented to the board of supervisors for inspection together with the result of said audit; that said audit and

statement so approved was tendered to the board of supervisors "for final delivery upon the making of such order for the payment of such account as required by the statute in such cases;" that the board of supervisors disallowed said claim. The approval of the circuit judge and the Governor attached to the account sued on are in this language:

"I hereby approve the above account for $4,573.15 as reasonable.

"Witness my signature this, the 9th day of February, 1921.

"D. M. GRAHAM, Circuit Judge,
    "2d District Mississippi."

"I hereby approve the above account for $4,573.15 as reasonable.

"Witness my signature this, the 24th day of February, 1921.

"LEE M. RUSSELL, Governor,
    "State of Mississippi."

The account itself exhibited with the declaration shows that a very large part of the work of auditing the records of the officers of said county was done by others than appellee, and furthermore that appellee charged for his own services as well as for the services of his helpers at a rate of more than seven dollars per day.

Appellant demurred to appellee's declaration, which demurrer was overruled by the court. Thereupon appellant filed several special pleas, all of which taken together simply amounted to a traverse of the allegations of appellee's declaration, to which special pleas appellee demurred, which demurrer was sustained by the court; and, appellant having declined to plead further, final judgment was entered in favor of appellee for the amount sued for.

Sections 2388 and 2391, Code of 1906 (sections 4780 and 4784, Hemingway's Code), being the first and next to the last sections of the statute as they appear in Hemingway's Code, authorized the Governor to appoint one or more ex-

pert examiners, "whose duty it shall be, under the direction of the Governor, to audit and examine the books, accounts, and vouchers of all officers, state or county," etc.

By virtue of section 2389, Code of 1906 (section 4781, Hemingway's Code), the second section of said statute, the Governor is given power to direct and control the examiner, "and shall fix his compensation at not exceeding seven dollars a day while actually employed, *the examiner to pay his own expenses;* and the Governor shall prescribe the time for which he shall be employed." (Italics ours.)    And section 2390, Code of 1906 (section 4782, Hemingway's Code), the third section, provides that a commission shall issue to the examiner so appointed "vesting in him authority to do and perform the duties for which he may be appointed."    And by this section he is given authority to issue subpœnas for witnesses whom he may wish to examine and administer oaths to them and compel their attendance, with the power to punish witnesses for contempt for refusal to testify.

Until the adoption of chapter 241, Laws of 1914 (section 4783, Hemingway's Code), the fourth section, there was no provision for payment for the services of such an examiner out of the county treasury of the county the books of whose officers were examined and audited by him. It will be observed that that act also provides that, where an examiner is appointed by the Governor under the first section to audit the books and accounts of county officers, and the examiner shall perform the services to which he is appointed, he "shall submit his bill for services, itemized, to the circuit judge of the district whose duty it shall be to approve the same, *if found correct and reasonable;* and thereupon said account, with a copy of the order of the judge or court, shall be sent to the Governor for his approval, who, if he shall find the same *correct and reasonable,* shall approve the same" (italics ours), and that thereupon the board of supervisors of the county whose books are audited "shall allow said account," and then it pro-

vides that, "as to auditors or accountants hereafter to be appointed by the Governor, this act shall apply only to cases where the Governor has been petitioned by 25 per cent. of the qualified electors of the county to appoint an accountant."

Appellant's assignment of errors raises several questions necessary to be passed upon in order to dispose of this appeal. It is contended that the statute in question is unconstitutional in so far as it confers power on the circuit judges and Governor to pass on the reasonableness and correctness of appellee's account for his services. That in conferring such power section 1 of our Constitution is violated, which section divides the powers of the government into three distinct departments, legislative, judicial, and executive, and confers on a separate magistracy the administration of each. The contention is that especially as to the power conferred on the Governor this provision of the Constitution is violated because such power is judicial, and not executive, and the Governor, being the head of the executive department of the government, could not constitutionally exercise judicial power. In discussing the separation of the powers of government into three divisions of legislative, judicial, and executive, and confiding each to a separate magistracy, Story in his work on the Constitution, vol. 1, section 525, p. 380, uses this language:

"But when we speak of a separation of the three great departments of government, and maintain that that separation is indispensable to public liberty, we are to understand this maxim in a limited sense. It is not meant to affirm that they must be kept wholly and entirely separate and distinct, and have no common link of connection or dependence, the one upon the other, in the slightest degree. The true meaning is that the whole power of one of these departments should not be exercised by the same hands which possess the whole power of either of the other departments, and that such exercises of the whole would subvert the

principles of a free Constitution.  This has been shown
with great clearness and accuracy by the authors of the
Federalist."

A discussion of this question will be found in 25 C. J.
sections 234 to 242, inclusive, pp. 802 to 810, inclusive.  It
will be observed from that discussion and the cases cited in
the notes that complete separation of the powers of gov-
.ernment into legislative, judicial, and executive so that
no part of the power exercised by one department can be
exercised by either of the others was never intended by
the makers of our Constitution, and that the line of de-
marcation between the three is often indefinite, and that
in practical operation each of the three departments neces-
sarily exercise some power which is not strictly within its
province.  For illustration the exercise of the veto power
by the executive is an exercise in part of legislative power;
and the power given the executive to pass on claims is an
exercise of quasi judicial power.  It is there stated further
that statutes conferring on officers, boards, or commis-
sioners quasi judicial functions, as, for example, the
power to inquire into and find the facts in reference to
matters properly within the scope of one of the other de-
partments of government, are not unconstitutional as en-
croachments on the judiciary.  In that category is placed
the power to fix the rates of common carriers conferred
on Railroad Commissions, etc.                       '

The Constitution of the United States as fully, and
completely separates the powers of the Government into
the three divisions as does the Constitution of this state,
as held by our court in *Lawson* v. *Jeffries,* 47 Miss. 686,
12 Am. Rep. 342.  By an act of Congress the President was
authorized and empowered to pass on the price to be paid
by the government for land for certain public purposes.
The contention was made that no such authority could be
conferred on the President, the head of the executive de-
partment of the government, because it involved the ex-
ercise of discretion and judgment, and was therefore judi-

cial power.   The Supreme Court in *Shoemaker* v. *U. S.,*
147 U. S. 283, 13 Sup. Ct. 361, 37 L. Ed. 170, in deciding
against that contention, among other things, said:

"The second objection made to the validity of the act is
because of certain functions to be performed by the Presi-
dent, which the objection characterizes as judicial, and
hence beyond his legal powers, and as incompatible with
his official duties.   The duties prescribed to the President
are the appointment of members of the park commission,
the approval of the price to be given for lands where an
agreement has been had between the owners and the com-
mission, and, if an agreement is not made, and a value is
put upon lands by appraisers appointed under the act, the
decision whether such value is reasonable.   The appoint-
ment of the commission is plainly an executive duty, and
the approval of the value or price, whether fixed by agree-
ment or appraisal, cannot be said to be a judicial act."

The following cases are illustrative of the view this court
has taken of like questions: in *Pegram* v. *Drainage* Dis-
trict, 108 Miss. 793, 67 South, 453, the question involved
was whether chapter 197, Laws of 1912, was violative of
the section of the Constitution here involved because it
vested judicial power in the drainage commissioners.   The
court held that, although the drainage commissioners were
given quasi judicial powers by the statute, in view of the
fact that their chief duties and functions were adminis-
trative, this provision of the Constitution was not violated.

In *City of Jackson* v. *Whiting,* 84 Miss. 163, 36 South,
611, it was held that section 2921, Code of 1892, as amend-
ed by Laws of 1898, p. 90 authorizing the Governor to pass
upon and approve applications for the incorporation of
municipalities not previously incorporated, was not uncon-
stitutional because it authorized the Governor to decide
questions belonging to the legislative department of the
government.   The board of supervisors is a body which ex-
ercises both powers quasi judicial and legislative, but one
of its chief powers is administrative.   The same is true

of the municipal authorities under the laws of this state. Under the statute here involved the Governor and the circuit judge are simply created an administrative board to pass on the reasonableness and correctness of the examiner's claim for services. They find the facts, it is true, and in doing so necessarily exercise judgment, but in no sense are they constituted a court to determine judicial questions in the sense of the Constitution. It would be practically impossible for the powers of the government to be so separated into three departments as that those exercising the functions and duties of one department could exercise none of the powers conferred on either of the other two departments. We are therefore of the opinion that this statute is not violative of the Constitution in that it confers judicial power on the Governor.

It is contended that the statute violates the due process clause of the Constitution of the state and of the United States because of the hearing before the circuit judge and the Governor is ex parte; no notice being required to be given the county whose funds are sought to be thus taken or appropriated. A complete answer to that contention is that the hearing before the circuit judge and the Governor is not a cause in court, is not a judicial proceeding, and due process is not required. The statute simply provides a method for the appropriation of public funds for a public purpose. The revenues of a county are not the property of the county in the sense in which the revenue of a private person or corporation is regarded. The revenues of a county are subject to the control of the Legislature, and when the Legislature directs their application to a particular purpose or to the payment of the claims of particular parties, the obligation to so pay is thereby imposed on the county. 15 C. J. section 238, p. 581; *Bell* v. *Cummings,* 130 Tenn. 566, 172 S. W. 290, L. R. A. 1915D, 274.

And furthermore, if the hearing before the board composed of the circuit judge and Governor was such a pro-

ceeding as that the parties in interest would have the right to be present at the hearing, that is provided for, because the board represents the county, and the examiner, of course, represents himself, and necessarily both are present taking part in the hearing. The statute simply provides a method by which public funds may be appropriated to a certain purpose, and the proceeding is not akin to a judicial proceeding, and therefore there can be no question of due process.

Appellant contends that the finding of the Governor that 25 per cent. of the qualified electors had petitioned for an examination of the records of the county by an examiner, as well as the finding of the Governor that the account presented by the examiner for his services was correct and reasonable, can be inquired into and assailed in this suit, on the ground that such action of the Governor is not final. Like questions have been before the courts of the county in various forms. In *State ex rel. Beach* v. *Olsen*, 91 Wash. 56, 157 Pac. 34, there was involved a statute giving the county game commissioners the right to fix the salary of the county game warden and to pass upon the propriety of his expenditures. The question was whether the board of supervisors of the county in examining and allowing such claims of the game warden had the right to determine upon the amount of the salary and propriety of his expenditures. The court held that the action of the game commissioners in fixing the salary and expenses of the game warden within the limits provided by the statute could not be inquired into. It was held in *State* v. *Dinkins*, 77 Miss. 874, 27 So. 832, that the statute authorizing the Governor to offer rewards for the arrest of escaped criminals vested in the Governor the discretion to refuse or allow such reward, and that a suit could not be maintained against the state for the recovery of a reward which the Governor had refused to order paid. The court held that offering rewards and their payment are matters intrusted solely to the discretion of the Governor, and such discre-

tion was controlled alone by the statute, fixing the amount that might be expended in this branch of the public service, that in all other respects the subject was solely in the discretion of the Governor, and that the law must leave the final decision upon every claim of this character somewhere and, when made, such decision must be accepted as correct, and that the presumption of correctness was just as conclusive in favor of executive action as in favor of judicial.

The case of *Woodbery* v. *McClurg*, 78 Miss. 831, 29 So. 514, involved the action of the attorney-general in refusing to certify that the charter of a corporation there involved was not violative of the Constitution or laws of the state. It was sought to force the attorney-general by mandamus to approve the charter. The court held that the statute conferred upon the attorney-general discretion and judgment which could not be controlled by mandamus.

In *City of Jackson* v. *Whiting, supra,* there was involved section 2921, Code of 1892, as amended by Laws of 1898, p. 90, providing for the incorporation of unincorporated hamlets, authorizing the Governor to pass upon the sufficiency of the petition therefor and whether it had the required number of signers and had been published as required by the statute in order to obtain a charter of incorporation. The court held that the statute conferred discretionary power upon the Governor. *Bank* v. *Lawrence County*, 109 Miss. 398, 69 So. 209, involved the construction of section 4566, Code of 1906, which authorizes the county superintendent of education to issue school-teachers' pay certificates. The court held that the action of the county superintendent in issuing such pay certificates was conclusive, and the board of supervisors has no discretion as to the allowance of warrants on such pay certificates. *State ex rel.* v. *Metts*, 125 Miss. 819, 88 So. 525, is not an authority to the contrary. It was held in that case, under sections 3308 and 3311, Code of 1906 (Hemingway's Code, sections 5804 and 5808), that the

census returns had to show a change in the classification of a municipality before the Governor could order a new census; that such change was a condition precedent to the power of the Governor to exercise the discretion conferred on him by the statute. Here the fact that the petition was sufficiently signed was a fact which under the statute the Governor was empowered to find. This question was not decided in *Neville* v. *Adams County,* 123 Miss. 413, 86 So. 261. We therefore hold that, in the absence of any statute authorizing a review by the courts of the action of the board composed of the circuit judge, and the Governor as well as of the Governor in passing on said petition, such action is final, provided the authority of such board and of the Governor is exercised within the limits of the statute.

It is contended, however, by the appellant that in allowing appellee more than seven dollars per day for his services and allowing him compensation for assistants the statute was violated. Plainly the statute confines the compensation of the examiner to a sum *"not exceeding seven dollars a day while actually employed,"* he to pay out of this his own expenses, and provides that the Governor shall fix the time for which he shall be employed. Personal fitness and personal service by the examiner is contemplated by the statute. He cannot sublet the work, nor can he employ others to do it for him and charge for their services. Chapter 241, Laws of 1914 (Hemingway's Code, section 4783), does not add to or in any manner extend the power of the Governor with reference to the appointment of examiners. The purpose of that statute was to devise a method to charge the counties whose records were examined with the costs thereof. It deals alone with examiners appointed under sections 2388, and 2391, Code of 1906 (sections 4780 and 4784, Hemingway's Code), The language in the statute that it should apply only to cases where the Governor had been petitioned by twenty-five per cent. of the qualified electors to appoint an accountant was not intended to authorize the appointment of an accountant in

any case where not theretofore authorized by the statute. Taking the context and general purpose of the statute into consideration, we think this clause simply means that the examiner should only be paid by the county when twenty-five per cent. of the qualified electors of the county petitioned the Governor to have him perform the service; and it was not intended to provide a new ground for the appointment of an examiner. The fact, however, that in commissioning appellant he was named as examiner for a certain county would not affect the validity of his appointment. We are of the opinion that the action of the circuit judge and the Governor in approving the account of the examiner for any sum beyond seven dollars a day for the actual days' services rendered by the examiner alone was beyond the power conferred on them by the statute, and therefore void, and that they were without authority to allow him any amount for the services of his assistants.

It is contended by appellant that the issuance of a commission to the examiner was a condition precedent to his right to perform the services in question. We think the plain language of the statute so provides. Section 2390, Code of 1906 (section 4782, Hemingway's Code), provides that a commission shall issue to the examiner "vesting in him authority to do and perform the duties for which he may be appointed." The commission is the evidence, and only evidence, of his authority, and is indispensable to his power to act. Appellee, therefore, in order to recover, was required to allege and prove the issuance and delivery of such commission to him.

Appellant contends further that the approval of the Governor and circuit judge of appellee's account is void because they failed to certify in their order of approval that they found it (in the language of the statute) "correct, and reasonable." Each of them indorsed on the account that it was approved "as reasonable." It might have been reasonable in their judgment, considering the value of the services rendered, and still have been in excess of

the amount authorized by law; and the fact is, as we have seen, it was in excess of the amount fixed by law. If the Governor and circuit judge had simply approved the account without stating the grounds on which they based such approval, probably the presumption would be indulged that they had found it "correct and reasonable." Instead, they undertake to state their grounds for approval, and in doing so left out one of the essentials laid down by the statute, namely that the account was "correct." This was not a compliance with the statute.

*Reversed and remanded.*