MOORE v. GENERAL MOTORS ACCEPTANCE CORPORATION.

(Division B. Jan. 6, 1930.)

[125 So. 411. No. 28283.]

**M. E. Denton**, of Marks, for appellant.

**E. C. Black**, of Marks, for appellee.

**Griffith, J.,** delivered the opinion of the court.

The right result was reached in this case in the county court, or at least it is not made manifest that there was any error on the merits, and, the decree having been affirmed on appeal to the circuit court, there must be an affirmance here unless otherwise required by the procedural error now to be mentioned.

The case was tried and adjudicated in the county court as an equity case, over the objection of appellant that it is a law case; appellant having at the proper time along with his objection aforesaid demanded a jury trial, as is allowed in law cases in the county court. We are of opinion that the contention of appellant that the case is one of law and not of equity was well founded and should have been sustained, although it is only fair to state that the contention of appellee that it is an equity case has some plausibility and is not wholly without reason.

The point is therefore squarely presented whether section 147 of the Constitution applies to county courts. That section is as follows: "No judgment or decree in any chancery or circuit court rendered in a civil case, shall be reversed or annulled on the ground of want of jurisdiction to render said judgment or decree, from any

error or mistake as to whether the cause in which it was rendered was of equity or common law jurisdiction. . . ."

Supported by several able members, there was a strong minority sentiment in the Constitutional Convention in favor of the combining of the jurisdiction in law and equity into one court; and the most potent argument in favor of that proposal was the evil that often, after arduous and expensive litigation, a judgment or decree correct on the merits would be reversed solely on the point that the case had been instituted and prosecuted in the wrong court. The proposal mentioned had, however, no considerable support for the further proposition that the right of trial by jury should be extended to all cases, including those that were equity; and, strange to say, the argument mentioned overlooked its own weakness, in that the conferring of the combined jurisdiction on one court would not avoid the evil mentioned, for the question sought to be avoided would immediately rise again, as it has arisen in the case at bar, on the matter of the right to a trial by jury.

But the Convention was well determined to preserve our separate court of chancery, and to meet the argument aforesaid and to cure the evil which was the chief basis of that argument, section 147 was devised and inserted in the Constitution. All original jurisdiction, except in petty law cases, was by the Constitution conferred upon the circuit and chancery courts, but at the same time and in the same article there was inserted the further provision found in section 172, that "the legislature shall, from time to time, establish such other inferior courts as may be necessary, and abolish the same whenever deemed expedient." It is under the latter section that the county courts have lately been established and are now a part of our judicial system, exercising jurisdiction concurrent with the circuit and chancery

court in civil cases in law and in equity up to amounts not exceeding one thousand dollars. And it was of no small part in the display of the wisdom of the legislature in establishing the county court that there was given to that court the corresponding jurisdiction in equity as compared with that conferred in law, for otherwise the very same evil, the same question now one of those under consideration, would have arisen and continued to arise, namely, the question whether a given case is one of law or equity, on objection to the jurisdiction.

It will be observed that the only courts mentioned in section 147 are the chancery and circuit courts. And if these words, these exact terms, were to absolutely control, yet there would have to be an affirmance in this case, for the reason that the case was appealed to the circuit court, and the point was there made that the case is a law case, and, so being, the county court was in error in adjudging it to be a case in equity and in refusing the demand for a jury trial. But the circuit court affirmed the county court, and thereby held with the county court that the case is an equity case, and, since this judgment by the circuit court is within the very terms of section 147, we cannot reverse here on account of the mistake mentioned.

Decision, however, should be placed back of the point just made. It is a familiar rule that the fundamental purpose in construing a constitutional provision is to ascertain and give effect to the intent of those who adopted it, to constantly keep in mind the object desired to be accomplished and the evils sought to be prevented or remedied.

In arriving at the intention of the makers of the Constitution, and in giving a construction which will extend today to the fair boundaries of that intention, the court is not to be constrained by the technical or literal meaning of the words used and as then used, nor to those

words are we to give only the meanings of them as known to the framers of the instrument at the time of its promulgation; and particularly is this true in respect to provisions intended to prevent or remedy definite evils, otherwise the same evils, in whole or in part, under new names or different disguises, could find another foothold within the same structure that was designed to keep them out. This principle of construction remains true even in the matter of grants of power, a feature upon which there is some more of strictness. One outstanding example of this will suffice: The power of Congress in respect to the Post Office Department and all its multitudinous activities is expressed and granted in this one short clause: "To establish post-offices and post-roads." Constitution United States, article 1, section 8, clause 7. Although not mentioned in words, the power to carry the mails from one post office to another along the post roads was never doubted. And the power under this grant to carry the mails on steamboats upon the lakes and rivers of the country was likewise never seriously questioned; yet technically it is not within the term "post roads," nor was the steamboat a method of transportation known or dreamed of when the Federal Constitution was ordained, and likewise today there is the new system of transportation of mails by airplanes which use no post roads.

So it is that words, separately considered and in the strictly technical sense in which used in a Constitution, and as defined at the day of their original use therein, do not of themselves immovably fetter the sense or intention, for, if that were held to be the case, the Constitution intended to stand for all time, or at least for a long time, would by such restriction make of itself only a temporary document; it would so enchain itself as to be incapable, in a healthful and uniform manner, of any expansion or development or movement with the living

current of the times, and would thereby hold within its embrace the certain means of its own ultimate destruction.

Another and a cardinal principle to be observed in the construction of a Constitution is that of consistency and uniformity, so that in a given situation its provisions shall be made to have the same effect or operation as in another situation when the two are alike in substance. Keeping this principle in mind, together with the principle, already mentioned, that a Constitution must be construed so as to vivify and effectuate, not to defeat in whole or in part, the policy indicated by its framers (Brien v. Williamson, 7 How. 14; Green v. Weller, 32 Miss. 650; St. Louis & S. F. Ry. Co. v. Benton County, 132 Miss. 325, 96 So. 689; Jarrolt v. Moberly, 103 U. S. 580, 26 L. Ed. 492), we think it is not to be tolerated that a case involving, say five hundred dollars, shall be not subject to review, as it would not be, on the point of jurisdiction as between law and equity, when tried in the chancery court, and yet that same case, exactly the same in every detail, if tried in the county court, acting in that case as a chancery court, would thereafter in this same matter of jurisdiction have to run the ancient gantlet which the makers of the Constitution had designed to close nearly forty years ago.

Thus we are not confined to the terms chancery court and circuit court as those terms are technically understood and as they were used in said section 147. They were the only terms which the existing situation, on the day the Constitution was promulgated, required; but another day has come forward, and now as to concurrent jurisdiction both in law and in equity, up to one thousand dollars, a new judicial tribunal stands to that extent within the same ground where then stood only the said chancery and circuit courts, and the new tribunal standing within the same ground is within the same intention in respect to the evils sought to be prevented and

remedied by section 147. It must follow, therefore, that, in order to conserve the manifest intention as well as the equally vital principle of uniformity, the said section must be held to apply to the county court, and that no judgment or decree of that court "rendered in a civil cause, shall be reversed or annulled," by any other court, "on the ground of . . . any error or mistake as to whether the cause in which it was rendered was of equity or common law jurisdiction."

Affirmed.