441 So.2d 1329 (1983)
William B. ALEXANDER, Senator; Joseph L. Blount, Representative; Ellis B. Bodron, Senator; Thomas L. Brooks, Representative; Edward H. Beulow, Jr., Representative; Thomas H. Campbell, III, Representative; Archie L. Cates, Representative; Donald Ray Chambliss, Representative; Aubrey Mitchell Childre, Senator; Robert L. Crook, Senator; Algie Arnold Davis, Senator; Glen S. DeWeese, Senator; Lawrence G. Dubaz, Jr., Representative; W. Edward Ellington, Senator; Thomas A. Gollott, Senator; Carl J. Gordon, Jr., Senator; J.K. Gresham, Senator; Richard E. Hall, Representative; R.G. Huggins, Representative; H.L. Merideth, Jr., Representative; Theodore J. Millette, Representative; Joe Henry Mulholland, Senator; C.B. Newman, Representative; Charles Ray Nix, Senator; Edgar H. Overstreet, Senator; Emmett H. Owens, Representative; F. Edwin Perry, Representative; John William Powell, Senator; Don W. Richardson, Representative; James C. Simpson, Representative; George P. Smith, Senator; Q. Emerson Stringer, Jr., Senator; W. Terrell Stubbs, Representative; John H. Waldrop, Senator; Thomas H. Walman, Representative; and Charles L. Young, Representative
v.
The STATE of Mississippi, By and Through Bill Allain, Attorney General.
No. 54741.
Supreme Court of Mississippi.
November 23, 1983.
Rehearing Denied December 14, 1983.
*1332 E.L. Brunini, Sr., John E. Milner, Walter S. Weems, Brunini, Grantham, Grower & Hewes, Jackson, for appellants.
Bill Allain, Atty. Gen., Stephen J. Kirchmayr, J. Stephen Wright, Susan L. Runnels, Sp. Asst. Attys. Gen., Jackson, for appellee.
En Banc.
PATTERSON, Chief Justice, for the Court:
The separation of governmental powers is the basis of this suit. Article I, Sections 1 and 2 of the Mississippi Constitution provides:

*1333 THE CONSTITUTION OF THE STATE OF MISSISSIPPI
ADOPTED NOVEMBER 1, A.D., 1890
Section 1. The powers of the government of the state of Mississippi shall be divided into three distinct departments, and each of them confided to a separate magistracy, to-wit: those which are legislative to one, those which are judicial to another, and those which are executive to another.
Section 2. No person or collection of persons, being one or belonging to one of these departments, shall exercise any power properly belonging to either of the others. The acceptance of an office in either of said departments shall, of itself, and at once, vacate any and all offices held by the person so accepting in either of the other departments.
In broad terms the issue presented is whether Article I, Sections 1 and 2 should be interpreted faithfully to accord with its language or whether it should be interpreted loosely so that efficiency in government through permissive overlapping of departmental functions becomes paramount to the written word.
The executive, legislative and judicial departments of the state all serve the same constituency and are, of course, subject to and bound by the terms of the same state constitution. The interpretation of the constitution becomes the duty of the judicial department when the meaning of that supreme document is put in issue. As long ago as 1823, Runnels v. State, Walker (1 Miss.) 146, held it the duty of the judiciary to declare void any legislative enactment which may be repugnant to the provisions of the constitution and that this duty is paramount to the authority of the legislature. This coincides with the genesis federal case, Marbury v. Madison, 1 Cranch 137, 170, 2 L.Ed. 60 (1803), which held that congressional enactments contrary to the constitution are void, thus establishing the great difference in this nation's government from that of other nations. See also, State v. Wood, 187 So.2d 820 (Miss. 1966).
It is universally accepted that the highest judicial tribunal of a state is the paramount authority for the interpretation of that state's constitution, subject only to the Constitution of the United States. In Highland Farms Dairy v. Agnew, 300 U.S. 608, 613, 57 S.Ct. 549, 552, 81 L.Ed. 835, 840 (1937), Justice Cardozo for the United States Supreme Court stated: "A judgment by the highest Court of a state as to the meaning and effect of its own constitution is decisive and controlling everywhere."
We are presently presented with interpretation of our constitution as it affects the rights and prerogatives of the executive and legislative departments of government.
We need express, to avoid misunderstanding, issues which are not presented. The litigants are each public officials having been duly elected to their respective positions. There is no intimation or charge of malfeasance, dishonesty or immorality in office or in the character of any litigant. Rather the issue is whether the members of the legislature have overstepped the restrictions imposed on them by the constitution and thereby encroached upon the powers constitutionally vested in the executive department.
This cause originated on April 7, 1982, when the legislators filed suit against Bill Allain in his official capacity as the Attorney General of the State of Mississippi. In response to an opinion letter from the Attorney General, the legislators sought a declaratory judgment:
1. That their concurrent service on the named state boards and commissions did not violate Article I, Sections 1 and 2 of the Mississippi Constitution of 1890[1]; and,
*1334 2. That the statutes providing for such service were constitutional.[2]
Later in the same day the Attorney General, in his official capacity, brought an action against the legislators seeking a declaratory judgment:
1. That the named boards were in the executive department of government;
2. That the named statutes were unconstitutional insofar as they authorized legislators to serve as or to appoint members of the boards;
3. That the legislators were in violation of Article I, Sections 1 and 2 of the Mississippi Constitution of 1890.
Additionally the Attorney General sought a final judgment:
1. Ousting defendants-legislators, with the exception of Charles Young and Edgar Overstreet, from the legislature, or, alternatively, ousting them from the boards; and
2. Ousting Charles Young from the Board of Corrections.
Having been consolidated for trial, the causes were heard November 15-18, 1982, in the Circuit Court of the First Judicial District of Hinds County. On February 3, 1983, the trial court entered its final judgment, to become effective January 1, 1984, declaring the controverted statutes unconstitutional to the extent they authorized legislators to sit on the boards. Additionally the court declared the legislators were removed from the boards and, with the exception of Charles Young, ousted from the legislature.
On appeal there are presented four major issues:
1. Whether the Mississippi Constitution forbids legislators to serve on the subject boards;
2. Whether and to what extent the Mississippi Constitution prohibits legislative involvement in appointments to the executive department; and
3. Whether the legislature may constitutionally vest in the senate the power to confirm certain executive appointments; and
4. Assuming answers favorable to the Attorney General on one or more of these questions, what should be the form and substance of the relief granted?
Our task is the application of Article I, Sections 1 and 2 of the Mississippi Constitution of 1890, as we interpret it, to the facts of this case. In this enterprise, we are guided by several maxims of constitutional interpretation.
First we note that the constitution is presumed capable of ordering human affairs decades beyond the time of ratification, under circumstances beyond the prescience of the draftsmen. Albritton v. City of Winona, 181 Miss. 75, 102-103, 178 So. 799, 806 (1938).
In Moore v. General Motors Acceptance Corp., 155 Miss. 818, 125 So. 411 (1930), Justice Griffith stated for the court the underlying principles of constitutional interpretation.
So it is that words, separately considered and in the strictly technical sense in which used in a Constitution, and as defined at the day of their original use therein, do not of themselves immovably fetter the sense or intention, for, if that were held to be the case, the Constitution intended to stand for all time, or at least for a long time, would by such restriction make of itself only a temporary document; it would so enchain itself as to be incapable, in a healthful and uniform manner, of any expansion or development or movement with the living current of the times, and would thereby hold within its embrace the certain means of its own ultimate destruction.
155 Miss. at 823-24, 125 So. at 413.
*1335 Applying these maxims, we seek the intent of the draftsmen, keeping in mind "the object desired to be accomplished and the evils sought to be prevented or remedied." 155 Miss. at 822, 125 So. at 412.
By 1890 separation of powers was no longer a mere political theory from the untested works of Locke and Montesquieu.[3] There was available years of experience by the federal sovereign whose constitution implied but did not express separation of powers. Additionally, there was the example of other states of the union, each of which had divided its powers of government into three branches.
Most important is Mississippi's history. Each of our previous constitutions  those of 1817, 1832, and 1869  explicitly required the executive, legislative and judicial powers be vested in separate and distinct departments of government. By 1890, our citizens had enjoyed 73 years of statehood with our government so organized.
With the knowledge and experience available to the draftsmen of the Constitution of 1890, this conclusion seems inescapable: By articulating the doctrine of separation of powers in our constitution, the framers avoided the vagueness of the implicit doctrine of the Constitution of the United States.
More significant are the changes made in 1890 in the statement of the doctrine. First, while the Constitution of 1869 reserved Article I for our bill of rights, regulating the separation of powers to Article III, the Constitution of 1890 reversed the order. This restructuring manifests the primacy of separation of powers in the state government.
The 1890 draftsmen made another meaningful change by adding to Section 2 the following sentence: "The acceptance of an office in either of said departments shall, of itself, and at once, vacate any and all offices held by the person so accepting in either of the other departments." Three previous constitutional conventions, 1817, 1832, and 1869 had failed to make any such provision. The draftsmen of those Constitutions had merely declared the powers of government should be separated. The Constitution of 1890 for the first time provided a penalty, automatic and severe, for those who violate its provisions. We conclude, as we must, from this history and language that the drafters of the 1890 Constitution intended to strengthen the constitutional mandate for separation of powers in this state.
Not only was this convincing sentence added, but contemporaneously with it, there was an important deletion. The three predecessor constitutions had provided for exceptions to the requirement that the powers of government be kept separate. For example, Article II, Section 2 of the Constitution of 1817 provided:
No person or collection of persons, being of one of these departments, shall exercise any power properly belonging to either of the others, except in the instances hereinafter expressly directed or permitted.

Identical "except as otherwise provided" language appears in Section 2 of the article on separation of powers contained in the Constitutions of 1832 and 1869, but was deleted in the Constitution of 1890. We must conclude the intention of the draftsmen was that there be no exceptions to the mandates that the powers of government be held and exercised in three separate and distinct departments and that no person holding office in any one department should have or exercise any power properly belonging to either of the others.
Having decided the constitutional draftsmen intended that the three departments of government be separate and distinct, we comment on the purpose of the separation. We again refer to Moore v. General Motors Acceptance Corp., 155 Miss. 818, 125 So. 411 (1930), wherein Justice Griffith stated the primary considerations for constitutional interpretation, "To ascertain and give effect to the intent of those who adopted it, to *1336 constantly keep in mind the objective desired to be accomplished and the evils sought to be prevented or remedied." 155 Miss. at 822, 125 So. at 412.
The objectives desired to be accomplished and the evils sought to be prevented by separation of governmental powers were articulated by the authors of The Federalist. In that work James Madison stated:
... It is agreed on all sides, that the powers properly belonging to one of the departments ought not to be directly and completely administered by either of the other departments. It is equally evident, that none of them ought to possess, directly or indirectly, an overruling influence over the others in the administration of their respective powers. It will not be denied, that power is of an encroaching nature, and that it ought to be effectually restrained from passing the limits assigned to it.
The Federalist, No. 48 (J. Madison) (J. Cooke ed. 1961).
Thomas Jefferson also wrote of the necessity of internal restraints on the powers of government:
... An elective despotism was not the government we fought for, but one which should not only be founded on free principles, but in which the powers of government should be so divided and balanced among several bodies of magistry, as that no one could transcend their legal limits, without being effectually checked and restrained by the others. For this reason that convention which passed the ordinance of government, laid its foundation on this basis, that the legislative, executive, and judiciary departments should be separate and distinct, so that no person should exercise the powers of more than one of them at the same time. Jefferson, "Notes on the State of Virginia", 1781-1785, ch. 13, as reprinted in "the Complete Jefferson" by Padover, Ch. XIV, pp. 648, 649.

Book v. State Office Building Commission, 238 Ind. 120, 149 N.E.2d 273, 294 (1958).
In his farewell address George Washington observed,
The spirit of encroachment tends to consolidate the powers of all the departments in one, and thus to create, whatever the form of government, a real despotism. A just estimate of the love of power, and proneness to abuse it, which predominates in the human heart, is sufficient to satisfy us of the truth of this position.

Book v. State Office Building Commission, 149 N.E.2d at 294.
See also, Blackstone, Commentaries on the Laws of England, 146 (7th Ed. 1775); Alexander Hamilton, The Federalist, No. 51; Montesquieu, The Spirit of Laws, 151-154 (T. Nugent Translation 1949); Charles Warren, Case and Comment, Vol. 35, No. 2, page 3; Book v. State Office Building Commission, 149 N.E.2d at 294-295.
Authoritatively, the United States Supreme Court in O'Donoghue v. United States, 289 U.S. 516, 530, 53 S.Ct. 740, 743, 77 L.Ed. 1356, 1360 (1932), addressed the significance of division of governmental powers into three departments:
This separation is not merely a matter of convenience or of governmental mechanism. Its object is basic and vital ... namely, to preclude a comingling of these essentially different powers of government in the same hands ... If it be important thus to separate the several departments of government and restrict them to the exercise of their appointed powers, it follows ... that each department should be kept completely independent of the others.
See also, Springer v. Phillipine Islands, 277 U.S. 189, 201, 48 S.Ct. 480, 482, 72 L.Ed. 845, 849 (1927).
The authorities acknowledge that inevitably, as government endures and enlarges, there will be areas in which the functions of the separate bodies will clash with the idealistic concept of absolute separation of powers. See United States v. Nixon, 418 U.S. 683, 94 S.Ct. 3090, 41 L.Ed.2d 1039 (1974); Broadus v. State ex rel. Cowan, 132 Miss. 828, 96 So. 745 (1923); Tenneco v. Barr, 224 So.2d 208 (Miss. 1969). Accepting the inevitability of such conflict we need to *1337 examine the scope and depth of the legislative intrusions, if there be such. Indeed, if the encroachment be occasional and thought necessary for efficiency in government, and if the transgression be into an administrative matter with no inherent danger of enlargement, then the argument of appellants that efficiency in government requires some overlapping has definite force. However, if the duties and responsibilities of the boards and commissions are ongoing and are in the upper echelons of governmental affairs, as are the boards and commissions under consideration, then the legislative trespass reaches constitutional proportions. At all times, we heed the vice intended to be prevented by the draftsmen by choice of words written into the constitution.
The legislators rely heavily on Jackson County v. Neville, 131 Miss. 599, 95 So. 626 (1923). That case, however, is consistent with the view we take here.
Jackson County concerned the constitutionality of a statute that required both a circuit judge and the governor to pass on the correctness of a fee and expense claim submitted by an auditor concerned with the books and records of county officers. The court labeled this function "quasi-judicial," relegating it to a minor administrative role without the potential of eroding the prerogative of either the executive or judicial departments.
Our only reservation regarding Jackson County is the inclusion of a quotation from Joseph Story's work on the Constitution of the United States in which he stated the "true meaning" of the doctrine of separation of powers was "that the whole power of one of these departments should not be exercised by the same hands which possess the whole power of either of the other departments." 131 Miss. at 624, 95 So. at 628.
Story was commenting upon the Federal Constitution, not the Mississippi Constitution of 1890. More importantly, he was interpreting a constitution which had no express mandate for the separation of powers. Moreover, the statements concerning the exercise of the whole power of one department of government by the other did not, and probably could not, envision a constitution such as ours wherein the separation is mandated. Story's statement has little power as controlling precedent for our consideration of the precise terms and meaning of our constitution.
The legislators also call to our attention Broadus v. State ex rel. Cowan, 132 Miss. 828, 96 So. 745 (1923). Broadus was a suit to oust from office a member of the Board of Supervisors of Harrison County on grounds that he had afterwards accepted the office of Trustee of a school district. The state argued that the office of supervisor was essentially judicial and that the office of school district trustee was essentially executive, and that Broadus was therefore constitutionally prohibited from simultaneously holding these two positions.
This Court rejected the claim that the constitutional mandate for separation of powers had been violated. First the court noted the office of school trustee was largely "ministerial" and that the office of supervisor was in part "administrative in character." 132 Miss. at 833, 96 So. at 746. The court concluded that the office of school trustee "is not in a wholly different department of the government as meant by Section 2, Article I of our State Constitution." 132 Miss. at 833, 96 So. at 746.
Beyond that, Broadus deals with separation of powers at the county level which, of course, is important, but it in no way is authority for the contention that a member of the legislative department may exercise powers at the core of the executive power.
Finally, the legislators' reliance on Edward Hines Yellow Pine Trustees v. State ex rel. Moore, 133 Miss. 334, 97 So. 552 (1924), is similarly misplaced. In that case the constitutionality of the Pearl River Swampland Act was in issue. That act had vested in the Secretary of State the authority to determine which lands were swamplands over which a board of commissioners had jurisdiction. The court thought this authority to be judicial but nevertheless upheld the constitutionality of that authority against the separation of powers charge. However this power is labeled, it was not at *1338 the heart of judicial power. And if there was a transgression into the judicial department it was slight and without the propensity of greater encroachment into the judicial power. Nothing in the case suggests the secretary of state could constitutionally exercise powers central to the judicial department.
The above authorities are distinguished from this case and therefore have little, if any, effect on the issues before us largely because the present problems are central to our representative and constitutional form of government.

I.

THE BOARDS AND COMMISSIONS
We begin our analysis of the issue of legislative encroachment on the executive department by defining executive power as the power to administer and enforce the laws as enacted by the legislature and as interpreted by the courts. Quinn v. United States, 349 U.S. 155, 161, 75 S.Ct. 668, 672, 99 L.Ed. 964, 971 (1954); Mabray v. School Board of Carroll County, 162 Miss. 632, 636, 137 So. 105, 106 (1931). Execution is at the core of executive power. We also find pertinent the following distinction: "Legislative power, as distinguished from executive power, is the authority to make laws, but not to enforce them or appoint the agents charged with the duty of such enforcement. The latter are executive functions." Springer v. Phillipine Islands, 277 U.S. 189, 202, 48 S.Ct. 480, 482, 72 L.Ed. 845, 72 L.Ed. 845, 849 (1927).
We next consider the agency which appears to be central to this controversy.

A. COMMISSION ON BUDGET AND ACCOUNTING

1. DESCRIPTION OF THE COMMISSION.
For 37 years, 1918 through 1955, the budget for the government of Mississippi was prepared by the Office of the Governor and submitted to the legislature for its consideration. See Laws of 1918, Ch. 225; Laws of 1932, Ch. 120; Laws of 1952, Ch. 320.
In 1955 the composition of the Budget Commission was altered when, by statute, four members of the Mississippi Legislature assumed positions on the Budget Commission and began to participate in all of its functions. See Laws of 1955, Ch. 24. In 1968, five additional legislators joined the commission, bringing the total to nine. Laws of 1968, Ch. 513.
The Commission of Budget and Accounting now consists of the following persons:

 William F. Winter Governor and Ex Officio Chairman
 Brad Dye Lieutenant Governor
 W.B. Alexander President Pro-Tempore
 Ellis Bodron Chairman of Senate Finance Committee
 Glen DeWeese Chairman of Senate Appropriations Committee
 Robert L. Crook Member of Senate named by the Lieutenant Governor
 C.B. (Buddie) Speaker of House of
 Newman Representatives
 H.L. Merideth, Jr. Chairman, House Ways & Means Committee
 F. Edwin Perry Chairman, House Appropriations Committee
 James C. Simpson Member of House of Representatives named by the
 Speaker
 Ted J. Millette Member of House of Representatives named by the
 Speaker

Mississippi Code Annotated § 27-103-1(1) (Supp. 1982).
Nine Commission members, Alexander, Bodron, DeWeese, Crook, Newman, Merideth, Perry, Simpson, and Millette, hold office in the legislative department of government and are appellants here.
The Commission of Budget and Accounting has the authority to appoint a director to administer its affairs, including, subject to the Commission's approval, the right to appoint and employ support personnel necessary to perform the duties of the Commission. Miss. Code Ann. § 27-103-11 (1972).
The activities in which the Commission has been engaged may be divided into five general areas:
(1) The preparation of a proposed state budget, called "the budget-making process";
*1339 (2) The administration of appropriations after the enactment of appropriations bills, here called "the budget-control process";
(3) Regulating purchases made by various state agencies;
(4) Administering the state employees' life and health insurance plans; and
(5) Miscellaneous duties.
The Attorney General contends each of these activities is an executive function belonging solely to the executive department of government and by virtue of Article I, Section 2, the above named appellants are constitutionally forbidden to perform such functions, either directly or indirectly.
The Legislators contend otherwise. First, they argue the separation of powers article should be given a flexible construction to permit an overlap in the exercise of powers. Second, the Legislators vigorously contend the present system is efficient, that it works well. The legislators argue that the affairs of state have been well managed with our government structured so that legislators have substantial influence upon boards and commissions which exercise powers we regard as essentially executive in nature. If such boards and commissions are essentially executive, then, in that event, the legislators' degree of control is of practical benefit to the state in that efficiency is promoted, or so we are told.
The second point, in our opinion, is legally irrelevant. "[T]he fact that a given law or procedure is efficient, convenient, and useful in facilitating functions of government, standing alone, will not save it if it is contrary to the Constitution." INS v. Chadha, ___ U.S. ___, ___, 103 S.Ct. 2764, 2780-81, 77 L.Ed.2d 317, 340 (1983). If the system be found efficient and nevertheless in violation of the constitution, our duty is clear. See Runnels v. State, Walker (1 Miss.) 146 (1823).
The first point is dispositive. Our ultimate inquiry is the correct meaning of Article I of the Constitution without regard to whether our interpretation be labeled flexible or rigid, liberal or conservative. We are engaged with what the people in convention assembled in 1890 intended and with what the document they made our supreme law means for us today.
We hold that the whole of the legislative power has been vested in the legislature of this state. We further hold that the whole of the executive power has been vested in a separate and distinct department of our government, and that no person a member of the legislative branch may consistent with the constitution exercise any powers essentially executive in nature.

2. THE BUDGET-MAKING POWER.
Constitutionally, budget-making is a legislative prerogative and responsibility in Mississippi. The legislature has the power and prerogative to provide for the collection of revenues through taxation and other means and to appropriate or direct the expenditure of monies so raised. Though subject to gubernatorial veto, the primary budget-making responsibility vests in the legislature.
This premise has been unequivocally stated in Colbert v. State, 86 Miss. 769, 39 So. 65 (1905), as follows:
Under all constitutional governments recognizing three distinct and independent magistracies, the control of the purse strings of government is a legislative function... . The right of the Legislature to control the public treasury, to determine the sources from which the public revenue shall be derived and the objects upon which they shall be expended, to dictate the time, the manner, and the means both of their collection and disbursement, is firmly and inexpugnably established in our political system... . The American commonwealths have fallen heirs to this great principle, and the prerogative in question passes to their Legislatures without restriction or diminution, except as provided by their Constitutions, by the simple grant of the legislative power.
86 Miss. at 775, 39 So. at 66.
The Legislature of this State has the power and prerogative to create such committee as it may deem appropriate to *1340 assist it in its budget-making responsibilities. The only limitation on these powers is that no person a member of the executive department of government may serve as a voting member on any such legislative budget committee.
The legislature has acknowledged the right of the Governor to submit to it his recommendations upon the budget prepared by the Commission of Budget and Accounting, not excluding a recommendation for changes thought desirable by the executive. Apparently this enactment is in recognition of the general powers vested in the Governor by virtue of Article V, Sections 116 and 122 of our Constitution. Mississippi Code Annotated, § 27-103-43 (1972), provides:
On or before December 15 preceding each regular session of the legislature, the governor shall submit to the members of the legislature or the members-elect, as the case may be, and to the executive head of each state agency, his recommendations regarding the budget as prepared by the commission of budget and accounting, together with any recommendations for changes which he deems desirable.
Although the statutory language seems to contemplate the governor will merely comment upon the recommendations of the Commission of Budget and Accounting, it does not preclude the governor from making an entire executive budget for the legislature's consideration. Indeed, the Governor did so for 37 years, 1918-1955, pursuant to the authority of Laws of 1918, Chapter 225; Laws of 1932, Chapter 120; and Laws of 1952, Chapter 320. In this regard we observe the Laws of 1918 were 28 years removed from the constitutional convention of 1890 and that the intention of the draftsmen was undoubtedly more firmly implanted in the memory of the legislators at that time than at present. Undoubtedly, the authorization for the executive budget came from Section 122 of Article V of the Constitution which provides, "The Governor shall, from time to time, give the legislature information of the state of the government, and recommend for consideration such measures as may be deemed necessary and expedient."
In sum, we are of the opinion the governor is constitutionally empowered each year to submit to the legislature an executive budget for its consideration in making appropriations for the government of this state. Implicit therewith the governor is entitled to establish within the executive department such committee as may be appropriate to assist him in this budget proposal/recommendation function. It necessarily follows that he has the prerogative to staff such commission or agency with persons whose loyalty is to the executive and not to the legislative department of government.
Ultimately, of course, the legislature has the power and prerogative to accept or reject the budget recommendation of the governor, in whole or in part. Indeed, under our present arrangement, the legislature has unrestricted power to accept or reject the recommendation of the Commission of Budget and Accounting, in whole or in part. Under our Constitution the final budget-making power is vested in the legislature because it has the ultimate responsibility of appropriation by which it can honor the budget by appropriating, in whole or in part, or refusing a budget request by non-appropriation. Colbert v. State, 86 Miss. 769, 775, 39 So. 65, 66 (1905).
The constitutional imperative that the powers of government be divided into separate and distinct departments, however, renders unconstitutional the organization of any commission or agency on which both legislators and members of the executive branch serve as voting members.
We hold that the Commission of Budget and Accounting as presently structured violates the article on separation of powers in this state. Legislator Appellants Alexander, Bodron, DeWeese, Crook, Newman, Merideth, Perry, Simpson and Millette, in our opinion, may not consistent with the constitution serve on a budget preparation commission or agency which also has as one of its voting members the Governor or other member of the executive department. Similarly, so much of § 27-103-1(1), *1341 as creates a Commission of Budget and Accounting composed simultaneously of members of both the legislative and executive departments as voting members is hereby declared unconstitutional.

3. THE BUDGET CONTROL PROCESS.
The budget control process presents a different issue in that it is an executive function.[4] Once taxes have been levied and appropriations made, the legislative prerogative ends, and executive responsibility begins to administer the appropriation and to accomplish its purpose, subject, of course, to any limitations constitutionally imposed by the legislature. See INS v. Chadha, ___ U.S. ___, 103 S.Ct. 2764, 77 L.Ed.2d 317 (1983). We have held above that the constitution does not permit the legislature to directly or indirectly invade the powers and prerogatives of the executive branch of government. The legislature thus may not administer an appropriation once it has been lawfully made and is prohibited from imposing new limitations, restrictions or conditions on the expenditure of such funds, short of full legislative approval.
Accordingly, we are of the opinion that Appellants Alexander, Bodron, DeWeese, Crook, Newman, Merideth, Perry, Simpson and Millette may not consistent with the constitution perform any budget control functions after appropriation. Similarly, so much of Section 27-103-1, et seq., as vests budgetary control powers and responsibilities in a commission on which persons who are members of the legislative department serve is hereby held unconstitutional.

4. OTHER MISCELLANEOUS EXECUTIVE POWERS.
The statutes enacted by the legislature, coupled with the record of the proceedings below, reflect that the Commission of Budget and Accounting has numerous additional powers and in fact, performs multi additional duties all of which are essentially executive.
These adjunctive powers include the administration of public purchasing statutes (Section 31-7-1, et seq.), and the administration of state employees group insurance program (Section 25-15-1, et seq.). Additional and assorted miscellaneous duties are also spread throughout the code, including the authority to approve rules adopted by the State Auditor for establishing a merit system for his employees (Section 7-7-7).
Other similar duties and responsibilities not essentially legislative, that is in accord with their constitutional function to provide the policy of the state through the enactment of laws, are noted below. To allow the authority for Educational Television to contract (Section 37-63-11); to give concurrence for the use of funds to travel outside the continental United States (Section 25-3-41); to advertise for and accept bids on equipment for the State Crime Laboratory (Section 63-11-47); to grant authority for the purchase of motor vehicles by state departments, institutions or agencies (Section 25-1-77); and to approve the disbursement of funds by the Mississippi Air and Water Pollution Commission (Section 49-17-13), are obviously duties or responsibilities that come within the Executive Department. None have functions essential to the legislative right of providing state policy through the enactment of laws. In our opinion, they are essentially, if not altogether, administrative functions within the prerogative of the executive department.
Further, the statutes grant the Budget Commission concurrent authority to obtain loans for interim financing of state ports and harbors from Mississippi banking institutions (Section 59-5-41); to approve the issuance of bonds and lease and/or sales *1342 contracts for the financing and development of a state port, harbor or waterway (Section 59-5-51); to approve contracts entered into by state agencies for printing, binding, engraving and lithographing (Section 31-1-1); and to approve the disposal of state property held as surplus property by the Surplus Property Procurement Commission (Section 31-9-15). Undoubtedly these rights, attempted to be bestowed by statute, are an enlargement of legislative power beyond constitutional restraints and as such are prohibited.
Consistent with what we have stated above, Appellants Alexander, Bodron, DeWeese, Crook, Newman, Merideth, Perry, Simpson and Millette may not constitutionally perform any of these functions because they properly belong to the executive department. Similarly, the statutes vesting in these appellants the powers and functions mentioned, or other functions which are in their essence executive, are hereby declared unconstitutional.

B. THE OTHER BOARDS AND COMMISSIONS.
We turn now to the remaining eight boards and commissions in issue, first looking briefly at their functions and compositions.
1. The Board of Economic Development is authorized by Mississippi Code Annotated, § 57-1-3(4)(Supp. 1983), to perform the following functions:
(a) To formulate the policy of the department regarding the economic and tourist development of the state.
(b) To use and expend any funds from state, federal or private sources coming into its hands for the purposes herein provided. State funds appropriated for the board shall be expended in accordance with the regulations governing the expenditures of other state funds.
(c) To discharge such other duties, responsibilities and powers as are necessary to implement the provisions of this chapter.
Appellants Newman, Powell and Hall serve on this board by authority of Section 57-1-3(1) (Supp. 1983).
2. The basic purpose of the Board of Trustees of the Public Employees' Retirement System is to administer the public employees' retirement law of 1952. Sections 25-11-3 and 25-11-15. Appellants Perry and Bodron are members of this board. Section 25-11-15(2).
3. The Central Data Processing Authority is composed of appellants Blount, Campbell, Walman, Gordon, Gresham and Smith, all legislators. Mississippi Code Annotated, § 25-53-7. The authority's duties, Sections 25-53-5 and 25-53-27 (Supp. 1983), include the following: To plan and implement acquisition and utilization of computer equipment by all agencies of state government; to contract with consulting firms; and to accept or reject bids for the acquisition of computer equipment and services.
4. The State Personnel Board consists of eight members, four of whom are appellants Waldrop, Overstreet, Brooks, and Huggins. Section 25-9-109 (Supp. 1983). The board's basic duty is to administer a state personnel system. Sections 25-9-101 and 25-9-115 (Supp. 1983).
5. The Medicaid Commission has the purpose of administering a statewide system of medical assistance. Section 43-13-103. Its specific duties include determining medical assistance eligibility as well as the scope, duration and amount of medical assistance to be provided by the state in accordance with the statute; to contract with other agencies; to sue in its own name; and to establish administrative methods. Sections 43-13-116 and 43-13-121 (Supp. 1983). Appellants DeWeese, Ellington, Richardson and Perry are members of this board. Section 43-13-107.
6. The Capitol Commission has the following primary duties:
(a) To exercise general supervision and care over and keep in good condition the following state property located in the City of Jackson... .
(b) To designate by order duly passed and spread upon its minutes suitable office space for the various state departments, officers and employees who are provided with an office in any of the *1343 buildings under the jurisdiction of the commission. .. .
(c) To approve or disapprove any lease or rental agreements by any state agency or department ...
Section 29-5-2 (Supp. 1983). Appellants Childre, Stringer, Beulow, Stubbs, Mulholland and Chambliss are six of the eight voting members of this commission. Section 29-5-1.
7. The Wildlife Heritage Committee has the statutory authority to acquire property interests; to administer and control the lands acquired; to employ engineers, lawyers, real estate counselors and appraisers; and to contract. Sections 49-5-71; -73; -75; -77; -87; and -88 (Supp. 1983). Appellants Gollott, Davis, Nix, Owens, Cates and Dubaz are members of this committee. Section 49-5-61 (Supp. 1983).
8. The Board of Corrections is composed of seven members who are appointed by the governor with the advice and consent of the senate. Section 47-5-12. The commission has the authority to approve proposals for the location of new facilities; to open bids; to hold hearings; to lease certain lands; and to enter into contracts and to sue. Sections 47-5-8; -20; -24; -31; -33; -37; -49; -56; -64; -66; -71; -75; -105; and -107. Appellant Young is a member of this board.
Using the analysis we employed in our consideration of the Commission of Budget and Accounting, we are of the opinion the boards and commissions listed above exercise powers constitutionally vested in the executive department of government. Their primary functions, as revealed by their enacting legislation, are to carry out laws previously enacted. Once a law is enacted, the executive department has the duty to administer and enforce it. See INS v. Chadha, ___ U.S. ___, 103 S.Ct. 2764, 77 L.Ed.2d 317 (1983).
We find no constitutional authority for appellants' contention that their service as legislators on these boards is made constitutional by the delegation of the executive duties, if any, to the directors of the boards. The directors are, of course, employed by the board and are subject to its every order. The primary functions of the boards and commissions are clearly the responsibility of their members, and since these duties are in essence executive duties, they may not be delegated by statute which would be contrary to the constitution.
Accordingly with what we have said above, appellants Newman, Powell, Hall, Perry, Bodron, Blount, Campbell, Walmon, Gordan, Gresham, Smith, Waldrop, Overstreet, Brooks, Huggins, DeWeese, Ellington, Richardson, Childre, Stringer, Beulow, Stubbs, Mulholland, Chambliss, Nix, Gollott, Davis, Owens, Cates, Dubaz and Young may not constitutionally perform any of these executive functions. Similarly, so much of the following statutes as create executive boards and commissions with legislative members are declared unconstitutional: Section 57-1-3 (Supp. 1983); Section 25-11-15 (Supp. 1983); Section 25-53-7 (Supp. 1983); Section 25-9-109; Section 43-13-107; Section 29-5-1; and Section 49-5-61 (Supp. 1983).

II.

THE POWERS OF APPOINTMENT
We have held above that any enactment providing that legislators may serve as voting members on commissions, boards and agencies performing essentially executive functions contravenes Article I, Section 1 of the Constitution. We have further held that those legislators who are exercising powers we have held to be essentially executive are thereby violating Article I, Section 2. We turn now to the legislators' argument that they have the power to appoint others to serve on various commissions, boards and agencies which are performing essentially executive functions.[5]
*1344 The legislators rely on Article IV, Section 103 of the Constitution which provides that the legislature shall determine the mode of filling vacancies in offices. They argue that under our decision in Clark v. State, ex rel. Miss. State Medical Association, 381 So.2d 1046 (Miss. 1980), the legislature is vested with all the powers of appointment not specifically granted to another branch of government. This argument is without merit, in our opinion, for it does not reach the critical issue, appointment to do what?
Article IV, Section 33 of the Constitution vests the legislative power in the legislative department of Government. Section 33 necessarily vests in the legislature the power and prerogative to appoint persons to assist in the discharge of its legislative duties.
Comparably Article V of the Constitution vests in the executive department the whole of the executive power. The chief executive power is vested in the Governor. Article V, Section 116. Other executive powers have been vested in the Lt. Governor, the Secretary of State, the State Treasurer and the Auditor of Public Accounts. Clearly the constitutional provisions creating and empowering these executive offices authorize their occupants to appoint persons to assist them in the discharge of their executive duties. These executive powers of appointment are also plenary and may be exercised as the executive wishes, subject only to the power of senate confirmation hereinafter discussed. Section 103 provides nothing to the contrary.
In their brief, the appellants state, "... the Court may not have to address the power of appointment issue, depending on its holdings on the main issues of the propriety of the service by legislators on the boards and commissions. The only arguable power of appointment question which may be presented is whether the Speaker of the House can appoint legislators to boards and commissions, and this question may well be subsumed by the Court's holding on whether legislators may in fact serve on the boards and commissions." Page 15, Note 5.
We have held the boards and commissions in issue to exercise powers constitutionally vested in the executive department. This would, of course, prohibit legislators from serving on such boards and commissions. Nevertheless we think we should briefly address Clark v. State ex rel. Mississippi State Medical Association, 381 So.2d 1046 (Miss. 1980), inasmuch as it is otherwise contended to vest all appointive powers in the legislature which are not specifically placed within the executive power. We first note that Section 103 of the Constitution addresses the "mode" of filling vacancies in all offices and not the appointive prerogative itself. The question in Clark, as we view it, was not the right to appoint but rather did the legislature in enacting the "mode" for filling a vacancy act unconstitutionally? Without citation of authority or, apparently, a review of other sections of our Constitution, the trial court held, "It is my opinion that the power here questioned is, by our Constitution, vested in the legislative department of government, and so the questioned statute does not encroach upon the governor's constitutional powers." 381 So.2d at 1050.
This Court affirmed the mode of filling vacancies was constitutionally placed within the legislative realm. Both the trial court and this Court approved the mode enacted for filling the particular vacancies. Neither the trial court nor this Court addresses the ultimate right of appointment. Thus, Clark is not authority for the issues presently before the court. We therefore think the appellants' limited reliance on it is without merit.
By the same token the attorney general's reliance on Section 99 is misplaced. That section provides that "The legislature shall not elect any other than its own officers, state librarian, and United States Senators... ." Nothing in this section inhibits the power and prerogatives of the legislature to appoint persons to assist it in performing its legislative functions.
Clark holds that the Mississippi Medical Association, a private voluntary association, may appoint three members of the State Board of Health, an agency whose duties are executive. Appointment of persons to *1345 an executive agency by a voluntary association with no ongoing vital connection with prerogatives of the legislative or executive departments of government and with no potential of weakening either of the departments does not reach constitutional proportions as do the charges presently in issue.
Further, the talk in Clark of general and limited powers of appointment is less than helpful, for it is constitutionally determined that the legislative and executive departments are both vested with general and limited powers of appointment. The legislative department possesses a general power to appoint persons to exercise legislative or quasi-legislative powers. This appointment power is constitutionally limited in that the legislature may not appoint persons to perform functions at the core of the executive or judicial power.
Similarly, Article V of the Constitution vests in the officers of the Executive Department the general power to appoint persons to assist them in carrying out their duties. We find this power of appointment at the core of Article V provisions creating and empowering the executive offices in our government. Therefore, we are of the opinion the power of the executive department to appoint executive subordinates is exclusive and legislative encroachment is prohibited by the language of Article I. Accordingly, we declare the following statutes unconstitutional insofar as they mandate legislative appointments to executive offices: Mississippi Code Annotated, §§ 27-103-1 (Supp. 1983); 29-5-1 (1972); 57-1-3 (Supp. 1983); XX-XX-XXX (1972); 25-53-7 (1972); 25-9-109 (Supp. 1983); and 49-5-61 (Supp. 1983).

III.

SENATE CONFIRMATION POWER
This alleged legislative usurpation of executive power must be considered separately. A number of statutes provide gubernatorial appointments to executive offices are to be made with the advice and consent of the senate.[6] The attorney general claims this statutory confirmation power is a violation of Article I, Sections 1 and 2 of the Constitution.
Our pattern of analysis is the same as we have previously employed. Is the power being exercised by the members of the legislative department at the core of the executive power or is the legislature affirmatively appointing persons who will then exercise powers at the core of the executive power? As we have stated above, where the answer to either of these questions is in the affirmative, there is a violation of Article I, Sections 1 and 2.
The senate confirmation power, however, in our view is different. It does not result in invasion of executive power.
First, the senate has been vested with no power to make appointments, its power being wholly negative. While it may withhold for any reason approval of an executive appointee, it may not affirmatively force on the executive department persons unacceptable to the governor or other members of that department.
Second, the senate maintains no control over the appointee once he has been confirmed; it has no power to discharge short of impeachment. Once confirmation is given the prerogatives of the senate are concluded. The loyalty of the employee or the appointee remains with the chief executive.
It is true the power to confirm executive appointments has not been vested in the senate or the legislature as a whole by any provision of the constitution. By the same token the exercise of this confirmation power is in no way the exercise of a power central to the executive. In the context of the structure of government of United States and of the states which was known to the draftsmen in 1890, we think the confirmation of power is commonly understood to be within the legislative prerogative. For example, the Constitution of the United States provides that the power of *1346 the president to appoint members of his cabinet and other top executive officials shall be "by and with the advice and consent of the senate." Article II, Section 2, Clause 2, Constitution of the United States.
The legislature has the constitutional power to vest in the senate the confirmation prerogative, so long as that prerogative is exercised in the essentially negative fashion as provided in the statutes here under attack. This prerogative must be limited to top discretion exercising officials of executive or administrative agencies. It may not be enforced so that the legislature substantially exercises or controls functions at the core of the executive power. Of course, the personal staffs of elected executive officers are not subject to confirmation, nor are the members of advisory commissions or boards.
We are of the opinion the confirmation power, insofar as it has been put in issue by the facts of this case, is not invasive of the power vested in the executive department by Article I, Section 1 and by Article V. We hold that the challenged statutes authorizing the exercise of this confirmation power are within the constitutional power of the legislature to enact. Under accepted canons of interpretation, these statutes may not be disturbed. State ex rel. Patterson v. Land, 231 Miss. 529, 95 So.2d 764 (Miss. 1957); Quinn v. City of McComb, 212 Miss. 730, 55 So.2d 479 (1951).
Basic to our holding is our recognition that there is another side to the coin labeled on one side "separation of powers." This other side, commonly referred to as "checks and balances," is the mandate that important checks be placed upon each department's exercise of its power.
For example, legislative power is checked by the governor's veto power [Article IV, Sections 72-73; See Jackson County v. Neville, 131 Miss. 599, 625, 95 So. 626, 628 (1923)], and by the judicial power of this Court to declare acts of the legislature unconstitutional. [Article VI, Section 144; Albritton v. City of Winona, 181 Miss. 75, 96, 178 So. 799, 803 (1938)].
The power of the judiciary is checked by the governor's pardon power [Article V, Section 124], and by the legislature's powers of impeachment and removal of judges. Article IV, Sections 49-53.
It is consistent with our constitutional system that the departments of government have powers to check and balance the other departments. This confirmation power is a legislative check on executive power.

IV.

RELIEF
For the reasons noted above, we affirm so much of the final judgment of the Circuit Court as, in accordance with Rule 57 of the Mississippi Rules of Civil Procedure, declares
(a) that various statutes vesting in members of the legislative department the power to perform functions at the core of those committed to the executive abridge the distribution of powers mandated by Article I, Section 1 of the constitution;
(b) that the Legislator Appellants are exercising powers and are performing functions at the core of executive power in violation of Article I, Section 2 of the constitution; and
(c) that the legislature, nor any of its officers or members, may not consistent with the constitution appoint by statute or otherwise persons to perform functions which are at the core of executive power.
The remainder of the judgment below is vacated. So much of the judgment below as may prohibit members of the legislative department of government from exercising their budget-making powers (as defined more fully above), and so much of the judgment below as declares unconstitutional or otherwise purports to interfere with the power and prerogative of the legislature to vest in the senate the power to confirm or reject certain executive appointments, are reversed and rendered.
So much of the judgment below as ousts the Appellant Legislators from their offices in the legislative department of government is vacated, and so much of the complaint filed by the attorney general as *1347 demands such ouster shall be dismissed without prejudice.
The modified declaratory judgment entry of which we here mandate shall be effective July 1, 1984.
We explain.
There can be little doubt of this Court's authority to ultimately adjudicate the removal of legislators from office for constitutional trespass. The adjudication of claims arising under Article I, Section 2, like other claims arising under the constitution and laws of this state, is well within the judicial authority vested in this Court. That the court has such authority, however, hardly mandates its exercise.
These legislators are not ordinary litigants. As duly elected members of a coordinate department of government, sworn faithfully to uphold and defend the same constitution as are we, they should be given our respect commensurate with their standing and responsibilities within our government. In this context we decline the exercise of the full judicial authority. We have declared and unmistakably held that these legislators have been unconstitutionally exercising powers in the core of the executive department. We have declared unconstitutional so much of the statutes as have authorized them to perform such functions.
We have provided that this declaratory judgment shall be of no force or effect until July 1, 1984, in order that the legislative and executive departments may have a reasonable period of time within which to make adjustments in the operation of government.
The citizens of Mississippi expect that the legislators will be true to their oaths faithfully to uphold and defend the constitution as interpreted by this Court. For "every person and every officer is obliged to accept the decision of the highest court as binding and their personal judgment must yield to the judicial declaration." Mississippi State Tax Commission v. Brown, 188 Miss. 483, 526, 195 So. 465, 470 (1940). Confident that the citizenry of this State will not be disappointed in this expectation, we refrain from reaching beyond the declaratory judgment articulated above.
AFFIRMED IN PART; REVERSED IN PART AND RENDERED.
WALKER and BROOM, P.JJ., and ROY NOBLE LEE, BOWLING, HAWKINS, DAN M. LEE, PRATHER and ROBERTSON, JJ., concur.
NOTES
[1] The following boards and commissions were named: (1) The Commission of Budget and Accounting; (2) The Capitol Commission; (3) The Board of Corrections; (4) The Central Data Processing Authority; (5) The Board of Economic Development; (6) The Medicaid Commission; (7) The Personnel Board; (8) The Board of Trustees of the Public Employees' Retirement System; and (9) The Wildlife Heritage Committee.

There was no testimony regarding The Board of Nursing Home Administrators, although it was named in the complaint.
[2] Those statutes are Mississippi Code Annotated, § 27-103-1(1) (Supp. 1983); § 25-53-7 (1972); § 25-9-109 (Supp. 1983); § 29-5-1 (1972); § 49-5-61 (Supp. 1983); § 43-13-107 (1972); § 57-1-3 (Supp. 1983); and § 25-11-15(2) (Supp. 1983).
[3] See Locke, Two Treatises of Civil Government II, Chapter XII (1690); Montesquieu, The Spirit of Laws (1748).
[4] By way of comparison, we note that the overwhelming majority of our sister states regard budget control as a purely executive power. See, e.g., Anderson v. Lamm, 195 Colo. 437, 579 P.2d 620 (1978); State ex rel. Schneider v. Bennett, 219 Kan. 285, 547 P.2d 786 (1976); In Re Opinion of Justices, 369 Mass. 990, 341 N.E.2d 254 (1976); State ex rel. Meyer v. State Board of Equalization and Assessment, 185 Neb. 490, 176 N.W.2d 920 (1970); People v. Tremaine, 252 N.Y. 27, 168 N.E. 817 (1929).
[5] The following statutes authorize legislators to appoint executive subordinates: (1) § 27-103-1 (Supp. 1983)  Budget Commission; (2) § 29-5-1 (1972)  Capitol Commission; (3) § 57-1-3 (Supp. 1983) Board of Economic Development; (4) § 43-13-107 (1972)  Medicaid Commission; (5) § 25-53-7 (1972) CDPA; (6) § 25-9-109 (Supp. 1983)  Personnel Board; (7) § 49-5-61 (Supp. 1983)  Wildlife Heritage.
[6] § 57-1-3 (Supp. 1983)  (5 members of the Board of Economic Development); § 43-13-107 (1972)  (3 members of the Medicaid Commission); § 25-9-109 (Supp. 1983)  (4 members of the Personnel Board); § 25-11-15 (Supp. 1983); (1 member of the Retirement Board); § 47-5-12 (1972)  (all 7 members of the Board of Corrections.)